658 A.2d 771

COMMONWEALTH of Pennsylvania, Appellee,

v.

Roger BUEHL, Appellant.

Supreme Court of Pennsylvania.

Submitted Oct. 17, 1994.

Decided May 16, 1995.

Reargument Denied July 5, 1995.

494

Samuel C. Stretton, for Buehl.

Roger Buehl, pro se.

Mary Ann Killinger, Robert A. Graci, Chief Deputy Atty. Gen., for Com.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE and MONTEMURO, JJ.

*OPINION ANNOUNCING THE JUDGMENT OF THE COURT*

MONTEMURO, Justice.

This is a direct appeal from an order of the Court of Common Pleas of Montgomery County denying Appellant's petition for relief under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. § 9541 *et seq.*, following the imposition of

a sentence of death.[1] After reviewing the issues raised by Appellant we affirm.

On July 16, 1982, the bodies of Courtland and Alexandra Gross and their housekeeper, Catherine VanderVeur, were found in the Gross's home. All three had been shot to death. The bullets and shell casings found at the scene matched those from two previous armed robberies, one of which Appellant admitted committing.[2] Appellant was charged with three counts of first degree murder, burglary, robbery, assault, reckless endangerment, weapons charges, and related offenses.

On January 18, 1983, Appellant was found guilty of murder in the first degree for the killings of Mr. and Mrs. Gross and Ms. VanderVeur. A separate sentencing hearing was held pursuant to 42 Pa.C.S. § 9711(a)(1), following which the jury imposed three consecutive sentences of death.[3]

Appellant filed a direct appeal from this judgment of sentence, and we affirmed in Commonwealth v. Buehl, 510 Pa. 363, 508 A.2d 1167 (1986). Reargument was denied on May 13, 1988. Appellant then filed a Petition for Certiorari with the Supreme Court of the United States, which was denied on October 3, 1988.

No further action was taken on this matter until January 16, 1990, when petitioner filed a pro se petition for post conviction relief. Counsel was appointed to assist Appellant in his postconviction claims and an amended PCRA petition was filed on November 11, 1991. Following a series of hearings on the petition, Appellant's PCRA hearing counsel was replaced by present counsel. On December 31, 1992, present counsel filed a supplemental brief in support of post-conviction relief. Ar-

1. In death penalty cases, the denial of post conviction relief is directly reviewable by this Court pursuant to 42 Pa.C.S. § 9546(d).

2. A more extensive recitation of the facts of this case may be found in our opinion in Commonwealth v. Buehl, 510 Pa. 363, 508 A.2d 1167 (1986), which affirmed Appellant's sentence on direct appeal.

3. Appellant was sentenced to ten to twenty years each on the burglary and robbery convictions. Sentencing on the remaining convictions either merged or was suspended.

gument was held on March 19, 1993, and relief was denied. Appellant now brings this appeal contending that he is entitled to relief on the grounds of prosecutorial misconduct, after-discovered evidence, and ineffective assistance of counsel.

We begin our analysis by noting that the purpose of the PCRA is not to provide a defendant with a means of relitigating the merits of issues long since decided on direct appeal. The strict eligibility requirements of the Act are set forth in Section 9543 which states:

§ 9543. Eligibility for relief

(a) General rule.—To be eligible for relief under this subchapter, a person must plead and prove by a preponderance of the evidence all of the following:

(1) That the person has been convicted of a crime under the laws of this Commonwealth and is:

(i) currently serving a sentence of imprisonment, probation or parole for the crime;

(ii) awaiting execution of a sentence of death for the crime; or

(iii) serving a sentence which must expire before the person may commence serving the disputed sentence.

(2) That the conviction or sentence resulted from one or more of the following:

(i) A violation of the Constitution of Pennsylvania or laws of this Commonwealth or the Constitution of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

(ii) Ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

. . . . . .

(vi) The unavailability at the time of trial of exculpatory evidence that has subsequently become available and

that would have affected the outcome of the trial if it had been introduced.

. . . . .

(3) That the allegation of error has not been previously litigated and one of the following applies:

(i) The allegation of error has not been waived.

(ii) If the allegation of error has been waived, the alleged error has resulted in the conviction or affirmance of sentence of an innocent individual.

(iii) If the allegation of error has been waived, the waiver of the allegation of error during pretrial, trial, post-trial or direct appeal proceedings does not constitute a State procedural default barring Federal habeas corpus relief.

(4) That the failure to litigate the issue prior to or during trial or on direct appeal could not have been the result of any rational strategic or tactical decision by counsel.

42 Pa.C.S. § 9543(a).

### Dwyer's Testimony

Appellant's first two claims concern the prosecution's failure to reveal evidence regarding Commonwealth witness Joseph Dwyer.[4] At trial, Dwyer testified that on July 7, 1982, he had stolen a red Buick Skylark from the vicinity of Ninth and Pine Streets in Philadelphia. Dwyer then sold the car to Francis Kelly, who in turn testified that he had loaned the Skylark and the Walther PPK handgun used in the Gross murders to Appellant on July 10, 1982. Corroborating Kelly's testimony, Dwyer also stated that he had seen the Skylark and the murder weapon in Appellant's possession on July 10, 1982. Dwyer further stated that when he saw Appellant on July 10, 1982, Appellant asked him to assist him in two robberies; one on Pine Street and the other in Montgomery County.

**4.** Appellant makes the same arguments in the context of ineffective assistance of counsel. Because the substantive arguments underlying these assertions do not provide a basis for relief, however, the ineffective assistance of counsel claims must fail.

In *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the United States Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective the good or bad faith on the part of the prosecution." 373 U.S. at 87, 83 S.Ct. at 1196–97. Appellant first contends that the prosecution committed a *Brady* violation when it failed to reveal a statement made by Dwyer during a confrontation with Kelly on the final day of jury selection in which Dwyer claimed to have seen Kelly in possession of the murder weapon several weeks after the murders. Prior to trial, Appellant had made a general discovery request for all statements made by Dwyer.

This claim, however, fails because the statement is simply not exculpatory and, thus, lacks materiality. We have previously held that when a general, as opposed to specific, request for exculpatory evidence is made, the evidence is material "if the omitted evidence creates a reasonable doubt that did not otherwise exist." *Commonwealth v. Green,* 536 Pa. 599, 640 A.2d 1242 (1994) (citing *Commonwealth v. Moose,* 529 Pa. 218, 602 A.2d 1265 (1994)).

Under the present facts, Dwyer's statement fails to meet this standard. Even if Appellant had established that the murder weapon had come into Kelly's possession three to four weeks after the murders, the Commonwealth presented overwhelming evidence that the murder weapon had been in Appellant's hands at the time of the killings. At trial, Appellant admitted that he had used the murder weapon in the robbery of the Good Scents Shop just two days prior to the killings. On the afternoon of the killings, the murder weapon was again employed in a robbery at the home of Richard Kirkpatrick. Later that evening, Appellant sold jewelry which was identified as having been taken from the Kirkpatrick home. On the afternoon of the killings, Appellant with a gun in his waistband arrived at the office of Commonwealth witness Joseph LaMotte and stated that he had just killed three people. In the days following the killings, Appellant told

witness Anthony Miller that he had killed people with a PPK. In addition, Appellant threatened to "blow Miller away" with the same gun. In light of this evidence, Dwyer's statement was not material because it would not have created a reasonable doubt as to Appellant's guilt. Thus, the prosecution's failure to reveal the statement does not constitute a violation of due process, and does not provide a basis for relief.

■ Appellant next argues that the prosecution violated *Brady* by improperly withholding evidence concerning the potential bias of witnesses Dwyer and Kelly. The source of this alleged bias was pending criminal charges against Dwyer and Kelly, and the preferential treatment Dwyer allegedly received while incarcerated. This claim does not satisfy the strict requirements of the PCRA. Thus, it fails to provide a basis for relief.

Under 42 Pa.C.S. § 9543(a)(2)(i), a violation of a defendant's constitutional rights provides a basis for PCRA relief only where the violation "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(i). In the instant case, Dwyer and Kelly testified that prior to the murders at the Gross estate, the gun used to commit them was already in Appellant's hands. This fact, however, had been established by the Commonwealth through evidence indicating that the bullets and shell casings found at the Gross estate matched the bullets and shell casings from the gun used in the robbery of the Good Scents Shop two days before the murders. Consequently, the prosecution's case would not have been affected even if Dwyer and Kelly were totally discredited. As a result, the prosecution's failure to reveal information that may have established the bias of these witnesses cannot be said to have "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place". *Id.* This claim, therefore, fails.

■ In his third allegation of error, Appellant contends that he is entitled to a new trial on the basis of Dwyer's recanta-

tion. Dwyer signed an affidavit on April 4, 1992, in which he stated that he had testified falsely at Appellant's trial in return for benefits promised by the Commonwealth. At the PCRA hearing on June 2, 1992, however, Dwyer refused to confirm any of the information contained in the affidavit and instead invoked his Fifth Amendment right to remain silent. Appellant then requested that the Commonwealth grant Dwyer immunity. The Commonwealth refused. Appellant requested that the trial court order that immunity be granted. This request was also refused. Appellant now asserts that Dwyer's affidavit alone entitles him to relief or, in the alternative, that the trial court erred by permitting Dwyer to invoke his Fifth Amendment privilege and by failing to order that Dwyer be granted immunity.

In raising this claim, Appellant again ignores the standards required to obtain relief under the PCRA. Section 9543 clearly provides that after-discovered evidence may serve as a basis for relief only when it "would have affected the outcome of the trial if it had been introduced." 42 Pa.C.S. § 9543(a)(2)(vi). As previously noted, Dwyer was not a key witness in the Commonwealth's case. Rather, the sole purpose of his testimony was to corroborate the overwhelming circumstantial evidence presented which established Appellant's guilt. In light of this significant evidence, Dwyer's recantation does not provide a basis for relief.

## Ineffectiveness of Counsel

■ Appellant raises eight claims of ineffective assistance of counsel. The three prong test under which these claims are to be reviewed when presented on direct appeal is well settled, and was recently reiterated by this Court in *Commonwealth v. Douglas*, 537 Pa. 588, 645 A.2d 226 (1994). First, a defendant must demonstrate that his claim is of arguable merit. In the event this threshold requirement is satisfied, a defendant must show that counsel had no reasonable basis for the act or omission in question. Finally, a defendant must establish that but for counsel's act or omission, the outcome of the proceedings would have been different. *Douglas*, 537 Pa. at 597, 645

A.2d at 230 (citing *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987); *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

However, where a claim of ineffective assistance is advanced on collateral attack, the PCRA renders more stringent the prejudice requirement which must be satisfied before relief can be granted. Specifically, Section 9543 requires a defendant to prove that counsel's ineffectiveness "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii).[5]

Appellant first alleges that his trial counsel was ineffective for failing to request a cautionary instruction regarding the use of other crimes evidence. In support of this claim, Appellant cites our holding in *Commonwealth v. Billa*, 521 Pa. 168, 555 A.2d 835 (1989). In *Billa*, we dealt with a direct appeal from a judgment of sentence of death following a defendant's conviction for first degree murder. The defendant's conviction arose from an incident in which he stabbed and then bludgeoned with a baseball bat a woman who had spurned his romantic overtures. At trial, the Commonwealth established that the defendant had raped the victim prior to murdering her. In addition, the Commonwealth introduced extensive evidence regarding a prior incident in which the defendant had raped and then attempted to strangle another woman who had rejected his sexual overtures. *Commonwealth v. Billa*, 521 Pa. 168, 174–175, 555 A.2d 835, 838 (1989).

On appeal, the defendant challenged the admission of this evidence and alleged that trial counsel had been ineffective for failing to request a cautionary instruction regarding the limited purpose for which this evidence could be used. Although

5. The legislature's intent that this language serve as an additional substantive requirement which must be proved in order for a defendant to obtain relief is evidenced by the fact that the PCRA's predecessor, the Post Conviction Hearing Act, 42 Pa.C.S. § 9543(3)(vi) (1982) (amended 1988), merely required that a defendant prove that he had been "[denied] his constitutional right to representation by competent counsel," i.e., that counsel had been ineffective.

we ultimately found the evidence to have been properly admitted, we determined that the defendant's allegation of ineffective assistance of counsel was of arguable merit because under our previous holdings the defendant was clearly entitled to a cautionary instruction. In addition, we found that because the evidence in question was extensive, inflammatory, and a substantial component of the Commonwealth's case, the defendant's trial counsel had no reasonable basis for his omission. Furthermore, we held that in light of the extensive and inflammatory nature of the evidence, we could not say with any reasonable certainty that but for this omission the outcome would not have been different. Thus, we granted the defendant a new trial on the basis that his attorney had been ineffective for failing to request a cautionary instruction. *Id.*

Buehl argues that, because the evidence of the robberies at the Good Scents Shop and the Kirkpatrick residence were a focal point of the Commonwealth's case-in-chief, trial counsel was ineffective under *Billa* for failing to request an instruction informing the jury that evidence regarding these crimes was admissible for the limited purpose of establishing identity.[6] The Commonwealth argues that Appellant has failed to show the prejudice necessary to sustain a claim of ineffectiveness of counsel and, as a result, his claim fails under our holdings in *Commonwealth v. Sam*, 535 Pa. 350, 635 A.2d 603 (1993) and *Commonwealth v. Rollins*, 525 Pa. 335, 580 A.2d 744 (1990).

**6.** Appellant also alleges that his trial counsel was ineffective for failing to request cautionary instructions after several witnesses made passing references to criminal activity unrelated to the case. These include suggestions of other death threats, attempting to hire out for murder, and possession of illegal weapons. These references, however, were neither extensive nor detailed.

Because the prejudice from such fleeting references was minimal, it fails to satisfy the standard set forth in *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987) and *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), that absent counsel's omission the outcome, of the proceeding would have been different. In addition, this claim fails because trial counsel may have wished to avoid emphasizing what might have gone relatively unnoticed by the jury, and thus possessed a reasonable basis for failing to request an instruction.

In *Sam* and *Rollins*, we clarified *Billa*, holding that counsel's failure to request a cautionary instruction regarding evidence of other crimes does not constitute *per se* ineffectiveness. Rather, in order to obtain relief under such a claim, a defendant must still satisfy each of the three prongs of the test for ineffective assistance of counsel.

In *Rollins*, we addressed the defendant's allegation that his trial counsel had been ineffective for failing to request a cautionary instruction following the admission of evidence regarding his prior drug activity. Although we noted that this claim was of arguable merit in light of *Billa*, where counsel had no reasonable basis for the omission, we nevertheless rejected Rollins' claim. We found that because the record was replete with evidence that the defendant, the victim, and the victim's family were involved in the sale and/or use of drugs, no prejudice had accrued from counsel's omission. *Commonwealth v. Rollins*, 525 Pa. 335, 580 A.2d 744 (1990).

Similarly, in *Sam* we also addressed the failure of the defendant's counsel to request a limiting instruction following the admission of other crimes evidence to the effect that the defendant had beaten his son and his niece. We held that these beatings did not so resemble the three murders being tried as to suggest a propensity to shoot three other relatives. As a result, we concluded that the defendant had failed to establish the prejudice necessary to sustain a claim of ineffective assistance of counsel.

We agree with Appellant that the instant case is distinguishable from *Rollins* and *Sam*. Here the record was not so replete with evidence concerning Appellant's involvement in robberies that counsel's failure to request a cautionary instruction could be deemed inconsequential. Indeed, the evidence concerning the robberies of the Good Scents Shop and the Kirkpatrick residence was the only evidence of similar crimes. Moreover, the evidence of these robberies is sufficiently similar to the robbery-murders committed at the Gross estate to suggest a propensity on the part of Appellant to commit such a crime. Like the evidence in *Billa*, the evidence concerning the robberies committed at the Good Scents Shop

and the Kirkpatrick home was a major part of the Commonwealth's case. Thus, we agree with Appellant that, under *Billa*, Appellant's trial counsel was ineffective for failing to request a cautionary instruction regarding these crimes because it cannot be said with any reasonable certainty that but for the this omission the outcome of Appellant's trial would not have been different.

Our determination that counsel was ineffective for failing to request such an instruction, however, does not end our analysis. Under Section 9543, such a claim will entitle a defendant to relief only in those instances in which counsel's ineffectiveness "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii).

In the instant case, the circumstantial evidence presented by the Commonwealth, including the evidence linking the bullets and shell casings from the robberies of the Good Scents Shop and the Kirkpatrick home to the murder weapon, created overwhelming evidence of Appellant's guilt. Thus, while we are able to say that due to the prejudicial nature of the evidence in question the outcome of Appellant's trial may have been different had counsel requested a cautionary instruction, we are unable to say that due to this omission the adjudication of guilt is unreliable. As a result, Appellant's claim does not constitute a basis for relief under the PCRA.[7]

Appellant next alleges that trial counsel was ineffective for failing to object either to the trial court's instruction to the jury regarding the issue of intent or to the language of the verdict slip given to the jury. Appellant also contends that prior appellate counsel was ineffective for failing to preserve this issue. The following portion of the trial court's charge is the target of Appellant's complaint:

> He is likewise charged with evidence of intent. In the trial of a person for committing or attempting to commit a crime

---

7. Our holding today in no way conflicts with our holding in *Billa* which dealt with an ineffectiveness claim in the context of a direct appeal from a judgment of sentence as opposed to the strict requirements of the PCRA.

of violence the fact that he was armed with a firearm used or attempted to be used and had no license to carry the same shall be evidence of his intention to commit said crime of violence.

(N.T., 1/17/83, 1420). The verdict slip submitted to the jury contained the following charge:

How say you on the charge of evidence of intent. Defendant on or about July 15, 1982, in the said County, in the trial of a person for committing or attempting to commit a crime of violence, the fact that he was armed with a firearm, used or attempted to be used, and had no license to carry the same, shall be evidence of his intention to commit said crime of violence.

Both of the charge and the verdict slip cite 18 Pa.C.S. § 6104, which provides:

§ 6104. Evidence of intent

In the trial of a person for committing or attempting to commit a crime of violence, the fact that he was armed with a firearm, used or attempted to be used, and had no license to carry the same, shall be evidence of his intention to commit said crime of violence.

Appellant now claims that the presence of the mandatory Section 6104 language caused confusion, as is demonstrated by the fact that on the verdict slip the jury found Appellant guilty of "evidence of intent". Moreover, it is argued that in addition to creating confusion, the "shall" command of the charge improperly relieved the prosecution of its burden of proving intent beyond a reasonable doubt. Thus, he alleges his trial counsel was ineffective for failing to object to the charge.

This claim does not provide a basis for relief. At trial, Appellant raised the defense of mistaken identity. Never did the defense assert lack of intent as a defense. Indeed, to have done so would have been futile because the evidence from which intent could be inferred was overwhelming. We find it unlikely that changing a single "shall" to a "may" in the context of a seventy-two page charge would have in affected the jury's finding that the three murders in question had been

510

intentionally committed in any way. Thus, Appellant's claim
fails the prejudice prong of the test articulated in *Douglas*,
and does not provide a basis for relief. *Commonwealth v.
Douglas*, 537 Pa. 588, 645 A.2d 226 (1994).

Appellant's third and fourth claims of ineffective assistance
of counsel fail because during the PCRA hearing trial counsel
articulated a reasonable basis for his actions. Our standard
for determining whether counsel had a reasonable basis for his
or her actions is well established. As we stated in *Common-
wealth v. Pierce*:

> "Our inquiry ceases and counsel's assistance is deemed
> constitutionally effective once we are able to conclude that
> the particular course chosen by counsel had some reason-
> able basis designed to effectuate his client's interests. The
> test is not whether other alternatives were more reasonable,
> employing a hindsight evaluation of the record. Although
> weigh the alternatives we must, the balance tips in favor of
> a finding of effective assistance as soon as it is determined
> that counsel's decisions had a reasonable basis."

*Pierce*, 515 Pa. at 158, 527 A.2d at 975 (quoting *Common-
wealth ex rel. Washington v. Maroney*, 427 Pa. 599, 604, 235
A.2d 349, 352–353 (1967)).

In bringing his third claim of ineffective assistance of
counsel, Appellant asserts that trial counsel was ineffective for
selecting juror, Agatha Baines, who had stated during *voir
dire* that she would automatically vote for the death penalty if
someone was convicted of first degree murder. This claim
ignores the testimony of Appellant's trial counsel at the PCRA
hearing of June 24–25, 1992, to the effect that he had chosen
Ms. Baines because of a feeling that she would be a good juror
for the guilt phase in which the defense was pursuing a
strategy designed to win outright acquittal. Such a strategic
decision clearly provides a reasonable basis for counsel's ac-
tion. Thus, we are required under *Pierce* and *Maroney* to
end our inquiry and hold that counsel's action did not consti-
tute ineffective assistance of counsel.

Appellant contends in his fourth allegation of ineffectiveness that his lawyer was ineffective when during his opening speech in the guilt phase he stated:

There is no dispute that the case is first degree murder or nothing. There is no dispute that the case is the death penalty or nothing. By the time you hear the evidence, the way I think the evidence is, there will be no question in your mind that the person, that perpetrator, the assailant, the murderer, should be executed.

(Trial testimony, N.T. 4).

When asked during the PCRA hearing why he had made these statements, Appellant's trial counsel gave the following explanation:

To gain credibility with the jury, we were laying it all out and that is, this is the case, beat them to the punch, it's a bad case, whoever, did this is a bad actor, but Roger Buehl didn't do it. So whoever did it, do whatever you want with them, but not Roger Buehl and that was the strategy.

This testimony reveals that trial counsel's action was undertaken as part of a reasonable strategy to seek outright acquittal in the guilt phase of Appellant's trial. Due to the presence of a reasonable plan of action, Appellant's claim of ineffectiveness does not provide a basis for relief.

Appellant next argues that trial counsel was ineffective because of the brevity and unpersuasiveness of his closing argument during the penalty phase. We have previously addressed this issue on direct appeal and found that in light of the extensive circumstantial evidence presented by the prosecution, Appellant was not prejudiced by the brevity of counsel's closing argument. *Commonwealth v. Buehl,* 510 Pa. at 384, 508 A.2d 1167, 1178 (1986). As a result, this claim has been previously litigated and warrants no further review.

Appellant's final three allegations of ineffective assistance concern counsel's failure to present Appellant's childhood psychiatric evaluations and the testimony of two expert witnesses during the penalty phase. Appellant claims this evidence would have established mitigating circumstances under 42

Pa.C.S. § 9711(e)(8), and under that portion of the death penalty statute providing for mitigation in those cases in which a defendant was under the influence of an extreme mental or emotional disturbance, 42 Pa.C.S. § 9711(e)(2).

■ Appellant first contends trial counsel should have called Dr. Andrew Thomas McLellan, an expert witness on the effects of methamphetamine. At the PCRA hearing on June 24–25, Dr. McLellan testified that after reviewing the trial record he had concluded that Appellant had been under the influence of a large dose of methamphetamine at the time of the killings, and that such a dose would have caused an extreme mental and emotional disturbance.

This claim ignores the fact that Dr. McLellan had never personally examined Appellant and, more tellingly, ignores the expert's candid admission on cross-examination that all of the behavior discussed in the testimony, on which he based his opinion, could have been caused by other psychiatric problems. Thus, Appellant's claim with respect to the testimony of Dr. McLellan lacks arguable merit because such testimony was inadmissible.

■ Appellant next alleges that trial counsel was ineffective for failing to present the testimony of a psychiatric expert, Dr. David J. Gorenberg, who had diagnosed Appellant as suffering from a borderline personality disorder.[8] Appellant similarly claims that trial counsel was ineffective for failing to present psychiatric records from his childhood.

In response, the Commonwealth contends that both of these claims fail in light of our holding in *Commonwealth v. Yarris*, 519 Pa. 571, 549 A.2d 513 (1988). In *Yarris*, the defendant argued that his trial counsel had been ineffective during the

---

8. We note that the trial court refused to allow Dr. Gorenberg to testify at the PCRA hearing because his testimony would have been inadmissible at trial. This was error because Dr. Gorenberg had personally examined Appellant and concluded that his psychiatric condition was in existence at the time of the murders. The trial court, however, did allow the defense to make an offer of proof revealing the information Dr. Gorenberg's testimony would have provided. Thus, we are able to address the merits of Appellant's claim and see no need to remand this matter for further testimony.

penalty phase of his trial for failing to introduce psychiatric records and expert testimony which revealed that he suffered from a severe personality disorder. We subsequently rejected this claim on the ground that Appellant had not been prejudiced by this omission because the evidence could have had a potentially detrimental effect on the defense's effort to avoid the death penalty. This was due to the fact that the evidence in question clearly portrayed the defendant as a highly dangerous person who would be likely to kill again.

This case presents an almost identical scenario. Like the defendant in *Yarris*, Appellant suffers from a borderline personality disorder, an extremely complex condition which substantially inhibits his ability to conform his behavior to the law. (N.T., 6/24–25/92 at 60–61). An examination of Appellant's psychiatric records reveals damaging comments such as, "... gives no evidence of truly wishing to rid himself of drug abuse ... psychopathic (sociopathic) personality ... severe obnoxious narcissistic personality ..." and "serious potential for increasingly dangerous acting out on his part." In light of these comments, we find it unlikely that but for the admission of this evidence the outcome of Appellant's sentencing hearing would have been different. Appellant's claim; therefore, does not provide a basis for relief.

### Trial Court Errors

██ Appellant asserts that the trial court erred in failing to grant funds to trial counsel for the retention of a psychiatrist, Dr. Kenneth Kool. At no time during the extensive post-conviction proceedings in this case, however, did Appellant present Dr. Kool as a witness in order to establish that Dr. Kool's testimony would have been favorable to the defense. As a result, Appellant has clearly failed to meet his burden of pleading and proving that the trial court's alleged error "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place."

██ Appellant's final claim alleges the trial court erred in failing to recuse itself from the post-conviction proceedings.

He argues that because the prosecutor at Appellant's trial, Judge Smythe, was now a member of the judiciary, the trial court would be unable to assess his performance objectively. It is well established that the party who asserts a trial judge must be disqualified bears the burden of producing evidence establishing bias, prejudice, or unfairness necessitating recusal. *Commonwealth v. Perry,* 468 Pa. 515, 364 A.2d 312 (1976). Furthermore, a decision by the trial court against whom the plea of prejudice is made will not be disturbed absent an abuse of discretion. *Commonwealth v. Darush,* 501 Pa. 15, 459 A.2d 727 (1983). In the present case, the only evidence Appellant presents of the trial court's alleged bias is the fact that the trial court failed to rule in his favor. Thus, we find no abuse of discretion in the trial court's decision not to recuse itself.

 Having addressed the claims raised by Appellant, we now turn to the trial court's decision to vacate the death sentence for the murder of Catherine VanderVeur. In reaching this decision, the trial court concluded that this Court had erred when it failed to vacate the sentence on direct appeal. This Court clearly addressed the sufficiency of the evidence to support the sentence in *Commonwealth v. Buehl,* 510 Pa. 363, 391, 508 A.2d 1167, 1181 (1986). Therefore, this issue has been previously litigated and should not have been addressed by the trial court. Furthermore, we are unaware of any recent development in our jurisprudence which permits the Courts of Common Pleas of this Commonwealth to overrule the decisions of this Court. Thus, the judgment of sentence of death against Appellant for the murder of Catherine Vander-Veur is reinstated.

The denial of Appellant's petition for relief under the Post Conviction Relief Act is affirmed and the judgment of sentence of death for the murder of Catherine VanderVeur is reinstated.[9]

---

**9.** The Prothonotary of the Supreme Court is directed to transmit as soon as possible, the full and complete record of the case *sub-judice* to the Governor of Pennsylvania. 42 Pa.C.S. § 9711(i).

NIX, C.J., files a concurring opinion.

CAPPY, J., files a dissenting opinion in which FLAHERTY, J., joins.

MONTEMURO, J., is sitting by designation.

NIX, Chief Justice, concurring.

Although I am in agreement with the criticisms expressed in Mr. Justice Cappy's dissenting opinion concerning the plurality's interpretation of the test for ineffectiveness of counsel, I am nonetheless constrained to concur in the denial of Appellant's petition for relief under the Post Conviction Relief Act. The plurality states that "where a claim of ineffective assistance [of counsel] is advanced on collateral attack, the PCRA renders more stringent the prejudice requirement which must be satisfied before relief can be granted." Majority op. at 505. For the reasons more fully articulated in Mr. Justice Cappy's dissenting opinion, I do not believe there exists a substantive distinction between the prejudice prong of the test for ineffectiveness of counsel and the language contained in 42 Pa.C.S. § 9543(a)(2)(ii), which requires the defendant to prove that counsel's ineffectiveness "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." In my view, this language merely reiterates the standard in *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987), and its progeny, that "a defendant is required to show that counsel's ineffectiveness was of such magnitude that the verdict essentially would have been different absent counsel's alleged ineffectiveness." *Commonwealth v. Howard*, 538 Pa. 86, 100, 645 A.2d 1300, 1308 (1994).

In light of the foregoing, I do not believe that counsel was ineffective for failing to request a cautionary instruction regarding the admission of other crimes evidence. The plurality holds otherwise, but then concludes that counsel's ineffectiveness did not undermine the truth determining process such that there was no reliable adjudication of Appellant's guilt or innocence. This conclusion is based upon the circumstantial

evidence presented by the Commonwealth which provided overwhelming proof of Appellant's guilt. It is precisely this evidence which leads me to conclude that Appellant has not met his burden of establishing that he was prejudiced by counsel's failure to request a cautionary instruction. Thus, the other evidence of Appellant's guilt renders counsel's omission harmless, and therefore, does not entitle him to relief due to counsel's ineffectiveness. Accordingly, I concur in the result as I believe that the plurality's attempt to deny relief on the basis of a heightened prejudice standard under in the Post Conviction Relief Act is unwarranted and unnecessary.

CAPPY, Justice, dissenting.

I am compelled to dissent from the conclusion of the Majority that although Appellant received ineffective assistance of counsel at trial when counsel failed to request a cautionary instruction regarding evidence of other crimes, such ineffectiveness provides Appellant no relief. Majority op. at 507.

I must take issue with the Majority's interpretation and application of the language of the relevant section of the Post Conviction Relief Act, ("PCRA"), 42 Pa.C.S. § 9543(a)(2)(ii), which the Majority concludes imposes a higher burden for the defendant in a PCRA proceeding when raising an ineffectiveness challenge than that for an ineffectiveness challenge on direct appeal. On direct appeal, the long-standing and well-established rule is that a defendant is required to show (1) there is merit to the underlying claim; (2) counsel had no reasonable basis for his course of conduct; and (3) that there is a reasonable probability that but for the act or omission in question the outcome of the proceeding would have been different. *Commonwealth v. Douglas,* 537 Pa. 588, 597, 645 A.2d 226, 230 (1994); *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987). Under the PCRA, the defendant must show that counsel's ineffectiveness "so undermined the truth-determining process that no reliable adjudication of guilt or

innocence[1] could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii).

In applying these two standards, the Majority determines that the PCRA imposes a "higher" standard, and concludes that

> while we are able to say that due to the prejudicial nature of the evidence in question the outcome of appellant's trial may have been different ... we are unable to say that due to this omission the adjudication of guilt is unreliable....

Maj. op. at 507. This conclusion is based on the Majority's finding that all the evidence in the case "created overwhelming evidence of appellant's guilt." *Id.* It is the Majority's conclusions that the PCRA effectively imposes a higher standard, and further that that standard has not been met here, with which I disagree.

I recognize that it was the intent of the legislature to "redefine" ineffectiveness of counsel when it passed the amendments to the Post–Conviction Hearing Act, which created the PCRA, in 1988.[2] During the legislative session at which the amendments were voted upon, Representative Hagerty stated:

> What [the amendment] does is it attempts to redefine ineffective assistance of counsel so that defendants cannot continually get new procedures. It seeks to look more towards is there a possibility that an innocent person is incarcerated rather than simply is there a technical violation that was performed that we are going to allow him to litigate for years and years.

---

**1.** The inclusion of the word "innocence" here is confusing, inasmuch as a criminal defendant is never adjudicated to be "innocent."

**2.** I also acknowledge that the Superior Court has been unanimous in finding that the PCRA does in fact impose a higher burden on a defendant seeking relief under the PCRA. *See, e.g., Commonwealth v. Korb*, 421 Pa.Super. 44, 617 A.2d 715 (1992). However, I am not aware of a case where the Superior Court has actually found prejudice under the *Pierce* test yet then declined to afford relief under the PCRA. The Superior Court did find prejudice, and subsequently concluded that the ineffectiveness undermined the "truth-determining process," in *Commonwealth v. Weinder*, 395 Pa.Super. 608, 577 A.2d 1364 (1990).

518

*See Legislative Journal—House,* February 24, 1988, at 324. Thus, the insertion of the language "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place" was meant to be a limiter on the ability of a defendant to obtain relief from a Sixth Amendment violation. However, notwithstanding the legislature's motives, I do not find that it had a constitutional basis for doing so, nor do I believe that it effectuated what it intended.

First, no matter how laudatory the legislature's effort to reduce the number of ineffective assistance of counsel claims which inundate the courts, a reduction cannot be secured by violating a defendant's Sixth Amendment constitutional right to the effective assistance of counsel. A legislative attempt to limit such claims by focusing its attention on the popular concept that too many criminals are freed by reason of "technicalities," is more than misguided, it is simply wrong. The Sixth Amendment right to counsel, through decades of jurisprudence beginning with *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), has been held to be a fundamental right. Moreover, the right to counsel has been held to be meaningless unless the counsel provided is competent and effective. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). If an accused person does not receive effective assistance of counsel, that is not a technicality, it is a violation of a fundamental constitutional right; insuring that a conviction is not a product of ineffective assistance is more than an exercise in determining whether there is a "technical" violation, it is an exercise in determining whether there has been a constitutional violation.

What constitutes a violation of an accused's Sixth Amendment right has already been defined by this Court in *Pierce* and by the United States Supreme Court in *Strickland v. Washington.* In that *Pierce* and *Strickland* clearly define that which will afford a defendant relief—to wit, that the defendant was prejudiced by counsel's actions to the effect that the outcome of the trial "*would* have been different,"—

little more can be said. If the outcome of the trial, that is the verdict, would be different because of the prejudice resulting from ineffective assistance of counsel, the defendant has not been afforded his Sixth Amendment right of effective counsel and he is entitled to appropriate relief.

Second, I find it logically impossible to articulate what higher standard could be imposed; that is, what the language "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place" *means*, if it in fact means something more than the *Pierce/Strickland* test. In *Strickland*, the United States Supreme Court offered its interpretation on the meaning of the constitutional requirement of effective assistance of counsel:

> The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.
>
> \* \* \* \* \* \*
>
> Unless a defendant [shows deficient performance and prejudice], it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
>
> \* \* \* \* \* \*
>
> An ineffective assistance claim asserts the absence of one of the crucial assurances that the result of the proceeding is reliable. . . .

466 U.S. at 686–687, 694, 104 S.Ct. at 2064, 2068, 80 L.Ed.2d at 692–693, 697. I find this language to be startlingly similar to the language which the legislature included in the PCRA. Clearly, the United States Supreme Court recognized that a "reliable" verdict cannot exist when a defendant has received ineffective assistance of counsel. How then is it possible to say that there is yet some "higher" burden that a defendant must overcome to be entitled to relief?[3]

---

**3.** As recently as 1993, this Court appeared to view the PCRA standard as consistent with a *Pierce* prejudice test. In *Commonwealth v. Szuchon*, 534 Pa. 483, 633 A.2d 1098 (1993), we held that in order for a

I believe the Majority's opinion reflects the inability to articulate what the "higher" standard could be. The Majority does not explain *why* the *adjudication* of guilt is reliable if the outcome would have been different. Does not the conclusion that the defendant could have been found "not guilty" render the adjudication of guilt unreliable? The Majority appears to equate the "no reliable adjudication of guilt" standard of the PCRA to either a sufficiency of the evidence analysis or a harmless error analysis. The Majority's application of either analysis is, to my mind, incorrect.

A sufficiency of the evidence analysis is typically used to determine whether the Commonwealth proved beyond a reasonable doubt all of the elements of the crime charged. It is *not* used to determine whether an error in the trial harmed the defendant such that a new trial is warranted. Similarly, the PCRA "no reliable adjudication of guilt" standard cannot be the same as a "harmless error" standard. An error is determined to be harmless when (1) the error did not prejudice the defendant or the prejudice was de minimis; or (2) the erroneously admitted evidence was merely cumulative of other, untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict. *Commonwealth v. Williams*, 524 Pa. 404, 573 A.2d 536 (1990). Once there is a determination that the defendant suffered prejudice under the *Pierce* test which could lead to a different result (verdict); it would not make sense to essentially "back up" and argue that the defendant was in fact *not*

defendant to establish a claim of ineffective assistance of counsel in a PCRA proceeding

> ... he must first demonstrate that the underlying claim is of merit; that counsel's action or inaction was not grounded on any reasonable basis designed to effectuate his interest; and that the commission or omission so undermined the trial that the verdict is unreliable. *Commonwealth v. Carpenter*, 533 Pa. 40, 617 A.2d 1263 (1992); *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987).

534 Pa. at 486, 633 A.2d at 1099 (emphasis added).

prejudiced under a harmless error analysis.[4]

The only remaining articulation of what the language "so undermined the truth determining process such that no reliable adjudication of guilt or innocence could have taken place" could mean is that an "actual innocence" test must be applied. However, our system of justice requires that there be articulable standards for determining guilt and for determining when a trial comports with due process and other constitutional guarantees. Guilt is determined by the Commonwealth proving beyond a reasonable doubt all of the elements of the crime charged, in a trial that is deemed to comply with the requisite constitutional guarantees, not by the defendant proving his innocence. Due process, and the Sixth Amendment, mandate that a defendant must be afforded effective counsel. Accordingly, if the conviction passes a sufficiency of the evidence test, but the defendant received ineffective assistance of counsel *because* he was prejudiced by counsel's stewardship, how can we then say that Appellant has no recourse because we believe he was not innocent? What is the articulable standard for determining when someone is not innocent after applying a sufficiency of the evidence test *and* the *Pierce/Strickland* test?

Finally, notions of fundamental due process would make it questionable that § 9543(a)(2)(ii) can impose a higher burden on a PCRA petitioner. The effective result of the Majority's holding is that if you have *very* bad counsel, *i.e.*, counsel that neglects to raise a meritorious issue at trial or in post-trial

**4.** To reiterate, the *Pierce* and *Strickland* tests set forth a three-part analysis for determining whether counsel has been ineffective, and thus whether a defendant's Sixth Amendment rights have been violated. *Part* of that test is whether the defendant suffered prejudice as a result of counsel's ineffectiveness. How is it possible to conclude that a defendant was prejudiced, and thus received ineffective assistance of counsel, but then find that that violation was somehow "harmless"?

Moreover, a "harmless error" test is essentially a burden on the *Commonwealth* to show that the error could not have contributed to the verdict beyond a reasonable doubt. The prejudice prong in an ineffectiveness test is a burden on the *defendant* to show that the outcome "would have been different." As such, the prejudice test is a *higher* standard that a defendant must meet in order to obtain relief than a harmless error test. Again, I cannot see how a finding of prejudice can thus ever be "harmless."

motions or on direct appeal, you have no recourse. Thus, the defendant is being "punished" for the very error that left him with only the PCRA as an avenue of relief. That conclusion appears to me to unjust and arguably violative of due process. Once a system of appeal is instituted, that system must operate fairly for everyone. To conclude that a defendant, making what is essentially a *collateral attack* on direct appeal,[5] can obtain relief but another defendant who has the unfortunate luck of having ineffective counsel at trial and on direct appeal has no recourse, creates a bizarre system.

Accordingly, I cannot agree with the Majority's conclusion that the PCRA imposes a higher standard, and that such standard was not met here. Contrary to my colleagues, I would hold that the verbiage set forth in § 9543(a)(2)(ii) is by constitutional mandate and logical application, nothing more than a recitation of the *Pierce* standard of prejudice. To do otherwise leads to the absurd result, as evidenced by the case *sub judice* where the defendant suffered a conviction while receiving the services of ineffective counsel, whose ineffectiveness admittedly prejudiced the defendant to a point where the "outcome of the trial (the verdict) would have been different," yet the defendant is offered no recourse because he has failed to show that the prejudice relates to the "truth-determining process," whatever that may be. To me, the truth-determining process is obliterated in an instance where an accused suffered ineffectiveness of counsel which so prejudiced him so as to lead to a conclusion that the verdict would have been different. Accordingly, I dissent.

FLAHERTY, J., joins this dissenting opinion.

---

**5.** In *Commonwealth v. Howard,* 538 Pa. 86, 645 A.2d 1300 (1994), we noted that an attack on the effectiveness of counsel is in essence a collateral attack even though it is raised in a direct appeal.