**Commonwealth v. Pulanco**

[redacted]

*Jonathan H. Kurland, assistant district attorney,* and *Kelly Kline, assistant district attorney,* for Commonwealth.

*Michael Dautrich,* for defendant.

LUDGATE, *J.,* January 28, 2009—The defendant appeals from this court's disposition of the defendant's petition pursuant to the Post Conviction Relief Act, "PCRA." This court adopts and incorporates its PCRA opinion dated December 3, 2008.

## CONSOLIDATED PROCEDURAL AND FACTUAL HISTORY

(1) On November 12, 2003, Henry Pulanco, the defendant, was charged in a Bill of Information with: one count of possession of a controlled substance, 35 P.S. §780-113(a)(16); one count of possession with intent to deliver a controlled substance, 35 P.S. §780-113(a)(30); one count of possession of drug paraphernalia, 35 P.S. §780-113(a)(32); one count of receiving stolen property, 18 Pa.C.S. §3925(a); one count of conspiracy to commit possession of a controlled substance, 18 Pa.C.S. §903(a)(1)(2); one count of conspiracy to commit possession with intent to deliver a controlled substance, 18 Pa.C.S. §903(a)(1)(2); one count of conspiracy to commit pos-

session of drug paraphernalia, 18 Pa.C.S. §903(a)(1)(2); and, one count of conspiracy to commit receiving stolen property, 18 Pa.C.S. §903(a)(1)(2).

(2) Attorney Kurt B. Geishauser represented the defendant at a bench trial held on July 30, 2004, wherein the defendant was found guilty of all counts except receiving stolen property and conspiracy to commit receiving stolen property.

(3) The defendant was sentenced on August 16, 2004 to a period of 10 to 20 years incarceration by the bureau of corrections in a state correctional facility.

(4) The defendant, through Attorney Geishauser, filed his notice of appeal on September 10, 2004 and filed a concise statement on September 27, 2004, raising insufficiency of the evidence and generally claiming error in the denial of the defendant's pretrial suppression motion.

(5) On October 12, 2004, this court issued a memorandum opinion in response to the defendant's concise statement of matters complained of on appeal.

(6) On November 17, 2004, Mr. Geishauser was replaced as counsel by Michael Cammarano, Esquire. On September 16, 2004, Attorney Cammarano filed a brief in support of the 1925(b) statement on behalf of the defendant, raising five more specific suppression issues and theories.

(7) The Superior Court affirmed this court's judgment of sentence in an unpublished opinion dated February 3, 2006. In the opinion, the Superior Court considered the merits of the insufficient evidence claim and the suppression issue "[w]hether a warrant issued for the second

floor rear apartment authorized the search of an adjacent apartment accessible only through a closet?" *Commonwealth v. Pulanco,* 897 A.2d 521 (Pa. Super. 2006) (unpublished memorandum). The Pennsylvania Superior Court deemed four of the five suppression issues raised by Mr. Cammarano to be waived for inability to reconcile the issues contained in the defendant's 1925(b) statement and the brief in support. *Id.*

(8) On September 21, 2006, the defendant filed his first pro se "motion for post-conviction collateral relief," pursuant to the Post Conviction Relief Act, 42 Pa.C.S. §9541 et seq. (PCRA). On November 2, 2006, the court appointed Michael Dautrich, Esquire to represent the defendant in the disposition of his PCRA petition.

(9) On May 4, 2007, Michael Dautrich, Esquire filed an "amended motion under the Post Conviction Relief Act." A PCRA hearing was to occur on July 24, 2007. On that date, by agreement of counsel, the court entered an order allowing the defendant to file an amended 1925(b) statement within seven days from the date of the hearing. On July 31, 2007, the defendant filed his timely "nunc pro tunc concise statement of errors complained of on appeal pursuant to order of court on July 24, 2007."

(10) On July 23, 2008, the Superior Court issued a published opinion which *vacated* this court's order of July 24, 2007 (which permitted the defendant to file an amended 1925(b) statement nunc pro tunc) and remanded the case to this court with instructions to conduct a PCRA analysis as to the merits of the defendant's PCRA petition. *Commonwealth v. Pulanco,* 954 A.2d 639 (Pa. Super. 2008). Specifically, the Superior Court instructed

"in the case sub judice, appellant has had appellate review of some, albeit not all, of his issues. There is no right to the reinstatement of appellate rights nunc pro tunc in this instance." *Id.* at 642. (citations omitted) Further, "[A] PCRA petitioner is entitled to an appeal nunc pro tunc where prior counsel's actions, in effect, entirely denied his right to a direct appeal, *as opposed to a PCRA petitioner whose prior counsel's ineffectiveness may have waived one or more, but not all, issues on direct appeal.*" *Id.* (citations omitted) (emphasis in original)

(11) On October 7, 2008, a PCRA hearing was held for purposes of complying with the Superior Court's remand. On December 3, 2008, this court issued an opinion dismissing the defendant's amended PCRA petition, denying the defendant's requested relief.

(12) The defendant, through his counsel, filed a timely notice of appeal on December 23, 2008. This court ordered the defendant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b); the defendant's 1925(b) statement was timely filed on January 20, 2009.

This opinion is written pursuant to Pa.R.A.P. 1925(a), and for the following reasons, this court respectfully requests the instant appeal be denied.

## ISSUES RAISED ON APPEAL

The defendant raises two issues for review:

"(1) Trial counsel was ineffective failing to file a detailed concise statement preserving all the following issues for appeal:

"Whether the affidavit filed in support of the search warrant application stated sufficient probable cause; Whether the warrant issued for 109 South 5th Street, Reading PA authorized to search 111 South 5th Street, Reading PA; Whether the warrant issued for the second floor rear apartment authorized to search of an apartment accessible only through a closet; Whether the search of an apartment was authorized as a protective sweep; and whether a protective sweep would [sic] authorized the search of object incapable of being concealed on a person.

"(2) Appeal counsel provided ineffective assistance of counsel due to the fact that the underlying suppression appeal claims had arguable merit, there was no reasonable basis for trial counsel to fail to fail [sic] a more specific concise statement and/or request an extension of time to do so, and petitioner was prejudiced by counsel's act or omissions in this regard due to the fact that the issues providing for the suppression of evidence were deemed waived by the Superior Court of Pennsylvania in Pulanco's initial direct appeal despite the fact that appeal counsel attempted to raise those issues on appeal."

## DISCUSSION

*Ineffective Assistance of Trial and Appellate Counsel*

In cases where counsel fails to file a 1925(b) statement when ordered to do so by the court, counsel is per se ineffective as prejudice to the defendant is presumed. See *Commonwealth v. Scott,* 952 A.2d 1190, 1192 (Pa. Super. 2008). Nunc pro tunc appeal is the proper remedy

when counsel's actions *entirely* denied a defendant direct appellate review. *Commonwealth v. Hernandez,* 755 A.2d 1, 9 n.4 (Pa. Super. 2000). However, in instances where counsel's acts or omissions caused waiver of one or more, but not all, issues on direct appeal, the defendant must establish that counsel's ineffectiveness so undermined the truth-determining process so as to render unreliable the adjudication of guilt or innocence. *Id.;* see also, *Commonwealth v. Halley,* 582 Pa. 164, 172, 870 A.2d 795, 801 (2005).

The standard by which a defendant may prove ineffective assistance of counsel (outside of the narrow circumstance when the per se ineffectiveness standard applies) is well established. First, counsel is presumed to be effective. *Commonwealth v. Rios,* 591 Pa. 583, 920 A.2d 790 (2007). In order to overcome the presumption of effectiveness and obtain relief on a claim of ineffective assistance of appellate counsel, a defendant must plead and prove (1) the underlying claim was of arguable merit; (2) that counsel had no reasonable basis for the action or inaction; and (3) the defendant was prejudiced by counsel's acts or omissions. *Commonwealth v. Pierce,* 537 Pa. 514, 645 A.2d 189 (1994). Failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim. *Commonwealth v. Sneed,* 587 Pa. 318, 899 A.2d 1067 (2006). Prejudice is established when a defendant has sufficiently shown that "but for the errors and omissions of counsel, there is a *reasonable probability* that the outcome of the proceedings would have been different." *Commonwealth v. Kimball,* 555 Pa. 299, 312, 724 A.2d 326, 333 (1999). (emphasis added) Counsel cannot be deemed ineffective for failure to raise a merit-

less claim. *Commonwealth v. Nolan,* 579 Pa. 300, 855 A.2d 834 (2004).

In accordance with the Superior Court's instructions upon remand in this case, the per se standard is inapplicable to the instant analysis pursuant to *Halley* and *Hernandez* because Mr. Geishauser did file a 1925(b) statement of errors complained of on appeal; the defendant did obtain direct review of four of his six issues. Accordingly, the three-prong *Pierce* test of ineffective assistance governs this case.

Mr. Geishauser's actions do not meet the *Pierce* test. Although the more specific claims of error which Mr. Geishauser failed to raise on appeal were of arguable merit and failure to raise them lacked a reasonable basis, Mr. Geishauser's acts or omissions do not meet the remaining prong of ineffective assistance. There is no reasonable probability that the outcome of the appeal would have been different had Mr. Geishauser successfully preserved and raised the five suppression issues, as each issue lacks merit. For the same reason, the defendant was not rendered ineffective assistance by Mr. Cammarano. Because this conclusion is based upon evaluation of the merits of the suppression issues which were deemed waived, the court will now address the merits of the issues.

The first issue which was not preserved for direct appeal challenges the probable cause upon which the search warrant was issued. Pennsylvania courts employ a "totality of the circumstances" test, as enunciated in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), for determining the existence of probable cause of the issuance of a search warrant. See *Commonwealth*

*v. Singleton,* 412 Pa. Super. 550, 551, 603 A.2d 1072, 1072 (1992) citing *Commonwealth v. Gray,* 509 Pa. 476, 503 A.2d 921 (1985). The United States Supreme Court has held that the magistrate's determination that probable cause existed must be given deference. *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Commonwealth v. Singleton,* 412 Pa. Super. 550, 552, 603 A.2d 1072, 1073 (1992), citing *Commonwealth v. Miller,* 334 Pa. Super. 374, 382, 483 A.2d 498, 501-502 (1984).

In the present case, the warrant's underlying affidavit of probable cause contains averments that allege, inter alia, that the affiant, Trooper Teresa Cloman, a trooper with the Pennsylvania State Police, was assigned to the Reading Vice Unit. The affidavit avers that the affiant had received special training in the area of drug law enforcement/investigation from the Pennsylvania Office of the Attorney General, the Pennsylvania State Police Academy, United States Department of Justice Drug Enforcement Agency, and the Pennsylvania National Guard Northeast Counterdrug Training Center. Additionally, the affidavit avers that the affiant had received numerous trainings and certifications, specifically in the area of illegal trafficking of controlled substances. (See Commonwealth's bench trial exhibit no. 1, page 2.)

The affidavit of probable cause goes on to state that "[t]hrough a combination of training, education and experience, your affiant has become familiar with the manner and methods of operations of persons involved in the distribution and use of controlled substances and based on that training, education and experience, your affiant knows that: (1) drug traffickers commonly have in their possession, and/or conceal on their persons, controlled substances, drug related paraphernalia, weapons, and/or other equipment or items utilized in the distribution of controlled substances; (2) that drug traffickers maintain books, records, receipts, notes, ledgers and other papers pertaining to the transportation, sale, and distribution of controlled substances and that the aforementioned items are maintained where traffickers have ready access to them; (3) that drug traffickers commonly maintain address and telephone records which reflect the names, addresses, and/or telephone numbers of their associates in the trafficking organization; (4) that persons involved in drug trafficking maintain, on hand, large amounts of cash in order to finance and facilitate their ongoing drug business; (5) that drug traffickers take or cause to be taken photographs of themselves, their associates, their property and their product and usually maintain those photographs in their possession; (6) that drug traffickers are frequently present for the purpose of purchasing or using controlled substances. I know that these individuals, if present, will commonly make attempts to conceal on their person, or to destroy any evidence." (See Commonwealth's bench trial exhibit no. 1, page 2.)

Next, the affidavit of probable cause describes occurrences that happened while the affiant was working in

an undercover capacity. The affidavit avers that on September 3, 2003 and on September 16, 2003, the affiant purchased heroin from a female named "India" and an unknown Hispanic male in the area between 107 and 109 South 5th Street in Reading City, Berks County, Pennsylvania. On both occasions, the affidavit states that the affiant saw two additional unidentified Hispanic males. Both times, the affiant transported the evidence back to the Reading State Police barracks and field tested the substance. A positive reaction for the presence of heroin was indicated both times. (See Commonwealth's bench trial exhibit no. 1, page 3.)

Finally, the affidavit of probable cause states, inter alia, that the affiant contacted the Reading City Vice Unit and was informed by Criminal Investigator Pat Leporace of ongoing drug activity in this location. The affidavit goes on to state that during this investigation, the affiant and other members of the Pennsylvania State Police Vice Unit had observed numerous drive-up and on-foot "buyers" at the rear lot of 107 and 109 South 5th Street. The affiant states in the affidavit that she believes that apartment number 5, at 109 South 5th Street is the main source of the supply of the heroin, which is being distributed through the lower level drug dealers in the area, and that the unknown Hispanic males control the distribution of the heroin and utilize the apartment as a means of concealing the "stash" of heroin. (See Commonwealth's bench trial exhibit no. 1, page 4.)

In considering the "totality of the circumstances" of this case and viewing the affidavit from a commonsense, non-technical perspective, the affidavit contains sufficient facts to determine that there was probable cause

that there were drugs at the premises. See *Commonwealth v. Baker,* 532 Pa. 121, 127, 615 A.2d 23, 25 (1992) (sufficient information existed for magistrate to make a neutral and detached decision whether there was a fair probability that contraband or evidence of a crime existed in a particular place based on hearsay information corroborated by officer's drug purchase). Therefore, the claim is meritless and failure to preserve or raise the issue did not result in prejudice to the defendant.

The second issue which was not preserved for direct appeal is whether a warrant issued for 109 South 5th Street, Reading, PA, authorized the search of 111 South 5th Street, Reading, PA. Article I, Section 8 of the Pennsylvania Constitution, like its federal counterpart, secures the right to be free from unreasonable searches and states, "no warrant to search any place or seize any person or thing shall issue without describing them as nearly as may be . . . ." Pa. Const. Art. I, Section 8; *Commonwealth v. Grossman,* 521 Pa. 290, 555 A.2d 896 (1989). Further:

"A search warrant directed against an apartment house, or other multiple-occupancy structure will be held invalid for lack of specificity if it fails to describe the particular room or subunit to be searched with sufficient definiteness to preclude a search of other units. *Commonwealth v. Carlisle,* 517 Pa. 36, 40, 534 A.2d 469, 471 (1987). (citations omitted) Where the description provided is precise enough to enable the officer to ascertain and identify, with reasonable effort, the place intended, and where probable cause exists to support the search of the area so designated, a warrant will not fail for lack of particularity. *In re Search Warrant B-21778,* 341 Pa.

Super. 350, 359, 491 A.2d 851, 856 (1985)." *Commonwealth v. Wilks,* 418 Pa. Super. 73, 78, 613 A.2d 577, 579 (1992).

In the present case, the application for the search warrant clearly denoted a specific apartment to be searched. Namely, the description of the premises states:

"The dwelling located at 109 South 5th Street, Reading City, Berks County, Pennsylvania is described as a three-story row apartment building. Specifically, the rear 2nd floor apartment display[ing] the number '5' on the exterior white door. Two Hispanic males and any other persons in the aforementioned apartment to prevent the destruction and removal of evidence." (See Commonwealth's bench trial exhibit no. 1, page 1.)

However, the warrant was for 109 South 5th Street while the apartment's actual address was 111 South 5th Street. The Superior Court has held that Pennsylvania Rule of Criminal Procedure 206 is not so technical as to require a search to be found unconstitutional if there is a mistake regarding the address of the building to be searched; a mistake as to the actual number of the apartment to be searched will not render the search unconstitutional, so long as, there is sufficient evidence that the police knew which residence it was that they intended to search and there was no question that probable cause for the search existed. *Commonwealth v. Washington,* 858 A.2d 1255, 1257 (Pa. Super. 2004), quoting *Commonwealth v. Belenky,* 777 A.2d 483 (Pa. Super. 2001).

In *Belenky,* a confidential informant had advised the police that the defendant was selling drugs from an apartment located at 4252 Salem Street in Philadelphia, Pennsylvania. *Commonwealth v. Belenky,* 777 A.2d 483,

485 (Pa. Super. 2001). After the police went to what they believed was this address and did a controlled buy, they sought and obtained a search warrant for the premises. While in the process of executing the search warrant three days later, it became apparent that the actual address of the building was 4251 Frankford Avenue. The court, finding that there was no ambiguity about the location where the criminal activity occurred and no question that probable cause for the search existed at the location that was searched, held the search to be constitutional. *Id.* at 487.

In the instant case, prior to execution of the search warrant, the police had made several controlled buys from the residence that was searched. Each buy had occurred from the back of the building, which was located next to 107 South 5th Street. The officer who applied for the warrant was unfamiliar with the area and assumed that the building next to 107 South 5th Street would be 109, when in fact it was 111 South 5th Street. (Omnibus pretrial hearing N.T. 3/18/04, p. 118.) It is clear from the testimony presented at the pretrial hearing that 111 South 5th Street was indeed the residence that the police intended to search. Therefore, the mistake as to number of the apartment did not render the search unconstitutional. Failure of counsel to raise or preserve this issue did not result in prejudice to the defendant as the issue is without merit.

The third suppression issue raised in the defendant's 1925(b) statement is whether a warrant issued for the second floor rear apartment authorized the search of an adjacent apartment accessible only though a closet. This issue was not waived for direct appeal and was previ-

ously addressed on its merits in the Superior Court's unpublished opinion of February 3, 2006. Petition for allowance of appeal was denied by the Pennsylvania Supreme Court on July 26, 2006. Accordingly, the issue should be dismissed as previously litigated. 42 Pa.C.S. §9544(a)(2); *Commonwealth v. Buehl,* 540 Pa. 493, 500, 658 A.2d 771, 775 (1995) ("[T]he purpose of the PCRA is not to provide a defendant with a means of relitigating the merits of issues long since decided on direct appeal.").

The fourth and fifth issues not preserved for appeal are whether the search of an adjacent apartment was authorized as a protective sweep and whether a protective sweep authorized the search of objects incapable of concealing a person. Under emergent circumstances, protective sweeps are a well-recognized exception to the warrant requirement. A protective sweep is "a quick and limited search of [the] premises, incident to an arrest and conducted to protect the safety of police officers or others." *Maryland v. Buie,* 494 U.S. 325, 327, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990). There are two levels of protective sweeps: (1) officers can, without probable cause or reasonable suspicion, look in closets and other spaces close to the place of arrest from which an attack could be launched and (2) officers can search for attackers further away from the place of arrest if they can sufficiently articulate specific facts that justify a reasonable fear for the safety of officers on the premises. See *Commonwealth v. Taylor,* 565 Pa. 140, 771 A.2d 1261, 1267 (2001). Under the state constitution, protective sweeps for persons are permissible; however, they must be swift and target only those areas where a person could reason-

ably be expected to hide; protective sweeps cannot be used as pretext for evidentiary search. Const. Art. I, Section 8.

The defendant's reliance on a theory that police exceeded the permissible scope of the protective sweep exception to the warrant requirement is misplaced. Here, the officers did not enter the adjacent apartment with the intent to effectuate a protective sweep. Instead, the officers entered the adjacent apartment in reliance on a valid search warrant for apartment number five. The officers walked through a closet into the adjacent apartment under a reasonable but mistaken belief that the adjacent room was an extension of apartment number five. The officers who executed the search warrant did not search the adjacent room pursuant to the protective sweep exception to the warrant requirement. Issues four and five are meritless and counsel cannot be found ineffective for failure to raise such issues on appeal or preserve the same.

The actions or inactions of Attorneys Geishauser and Cammarano only caused waiver of claims which are meritless or have been previously litigated. The defendant has therefore failed to show how he suffered prejudice due to the actions of his attorneys for failure to meet the burden of showing reasonable probability that the outcome of the direct appeal would have been different. The court requests the instant appeal be denied.