724 A.2d 909

**COMMONWEALTH of Pennsylvania, Appellant,**

**v.**

**Richard KELLY, Appellee.**

**Commonwealth of Pennsylvania, Appellant,**

**v.**

**Edward Domes, Appellee.**

Supreme Court of Pennsylvania.

Argued Sept. 15, 1997.

Decided Jan. 21, 1999.

Robert E. Colville, Claire C. Capristo, Sandra Preuhs, Pittsburgh, for the Com.

Robert A. Crisanti, Pittsburgh, for Richard Kelly.

John Pushinsky, Pittsburgh, for Edward Domes.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

### OPINION OF THE COURT

CASTILLE, Justice.

This Court granted review solely to determine whether the Superior Court erred in reversing appellees' convictions for first degree murder on the ground that an instruction to the jury that tracked the language of Section Eighteen of the Pennsylvania Uniform Firearms Act (18 Pa.C.S. § 6104)[1] created an impermissible mandatory presumption with respect

---

1. The relevant section states:

> In the trial of a person for committing or attempting to commit a crime of violence, the fact that he was armed with a firearm, used or attempted to be used, and had no license to carry the same, shall be evidence of his intention to commit said crime of violence.

to a material element of the crime which could not be deemed harmless error. For the reasons that follow, we affirm the order of the Superior Court and remand for a new trial.

On September 6, 1994, after a joint trial before a jury, appellees were found guilty of first-degree murder. The trial judge entered judgment on the verdict and sentenced appellees to the mandatory sentence of life in prison. Subsequently, new counsel was appointed for each appellee, and post-trial motions were filed alleging, *inter alia*, that the trial court's instruction on intent, which substantially conformed to the language of 18 Pa.C.S. § 6104, had created a mandatory presumption in favor of the Commonwealth with respect to a material element of the crime, thereby violating both the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article One, Section Nine of the Pennsylvania Constitution.[2] The trial court rejected the post-trial motions.

Subsequently, appellees separately filed timely Notices of Appeal to the Superior Court. The Superior Court reversed the trial court's denial of post-trial motions, determining that the instruction tracking 18 Pa.C.S. § 6104 was erroneous and constituted prejudicial error necessitating a new trial. The Commonwealth filed timely Petitions for Allowance of Appeal. This Court granted further review and ordered these matters consolidated for purposes of appeal.

The evidence adduced at trial establishes that on June 26, 1993, appellees were visiting the apartment of Monica Dreher in the city of Clairton, Allegheny County. Various members of the Dreher family and other persons were present. Carl Bracey, the victim, arrived at the apartment with Nellie Dreher, his fiancée, and began to argue with appellee Edward Domes.[3]

**2.** Because the instruction at issue fails to satisfy due process under the United States Constitution, separate analysis of the instruction under the Pennsylvania Constitution is not necessary.

**3.** Nellie Dreher testified at trial that the argument began when a woman who was present in the Dreher home asked Domes to tell her

At this point, Bracey and his fiancée left the apartment, followed closely by appellees. Shortly thereafter, an altercation erupted between the victim and appellee Domes. According to the testimony of Nellie Dreher, the victim was on top of Domes when appellee Kelly pulled out a handgun, pointed it at the victim's neck, and ordered him off of appellee. The victim complied, asked if he was going to be shot, then turned to run from the scene. At that point, Domes brandished his own handgun, and he and Kelly both fired in the victim's direction. One of the bullets struck the victim in the back of the neck, and the victim fell to the ground. Police did not find the murder weapon, and no determination was made as to which of the two assailants fired the fatal shot. The Commonwealth adduced evidence at trial demonstrating that neither defendant had a license to carry a concealed firearm.

The Commonwealth contends that the Superior Court erred first by concluding that the instruction at issue created an impermissible mandatory presumption concerning the element of intent, and second by determining that the purported error did not amount to harmless error. We disagree in both respects and affirm the Order of the Superior Court remanding this matter for a new trial.

■ The Due Process Clause of the Fourteenth Amendment protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. *Francis v. Franklin,* 471 U.S. 307, 313, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985)(citing *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)). This bedrock, axiomatic and elementary constitutional principle prohibits the state from using evidentiary presumptions in a jury charge that have the effect of improperly relieving the state of its burden of persuasion beyond a reasonable doubt of every essential element of a crime charged. The first question before this Court then is whether the challenged jury instruction had the effect of relieving the Commonwealth of its burden of proof on the

his name. When Domes replied with an alias, Bracey told the woman that the alias was not Domes' real name, causing Domes to grow angry.

critical question of *mens rea* by creating a mandatory presumption of the actor's intent upon proof that appellees used or attempted to use unlicensed firearms while committing or attempting to commit a crime of violence.

The analysis is straightforward. "The threshold inquiry in ascertaining the constitutional analysis applicable to this kind of jury instruction is to determine the nature of the presumption it describes." *Francis v. Franklin*, 471 U.S. at 314, 105 S.Ct. 1965 (quoting *Speiser v. Randall*, 357 U.S. 513, 514, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958)). This Court must determine whether the challenged portion of the instruction creates a mandatory presumption, or merely a permissive inference. A mandatory presumption instructs the jury that it must infer the presumed fact if the state proves certain predicate facts. On the other hand, a permissive inference suggests to the jury a *possible* conclusion to be drawn if the state proves predicate facts, but does not *require* the jury to draw that conclusion. In determining whether a mandatory presumption or a permissive inference has been created, a reviewing court must assess the challenged instruction from the viewpoint of a reasonable juror and declare it to create a "mandatory presumption" if such a juror could reasonably believe that proof of the predicate facts automatically shifts the burden of persuasion on the relevant element to the defendant. *See id.*, 471 U.S. at 315, 105 S.Ct. 1965.

A mandatory presumption is the more troublesome of the two evidentiary devices, "for it may affect not only the strength of the 'no reasonable doubt' burden but also the placement of that burden; it tells the trier that he or she *must* find the elemental fact upon proof of the basic fact, at least until the defendant has come forward with some evidence to rebut the presumed connection between the two facts." *Ulster County Court v. Allen*, 442 U.S. 140, 157, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979)(emphasis added). If a jury instruction contains a mandatory presumption, a reviewing court must examine the presumption on its face to determine the extent to which the basic and elemental facts truly coincide. If these facts do not coincide, then the presumption will be deemed

violative of due process, regardless of whether an independent evaluation of the facts presented by the state supports the mandatory inference. *See id.* If, on the other hand, a jury instruction contains a permissive inference, then the totality of evidence in the record other than the presumption will be germane in an analysis of the inference's constitutional validity. *See id.*

Thus, the first step for this Court is to decide whether the instruction given by the trial court created either a mandatory presumption or a permissive inference. For the reasons that follow, we conclude that the instruction created a mandatory presumption. The instruction at issue stated:

> [This is] the trial of a person for committing or attempting to commit a crime of violence. If you believe that he was armed with a firearm or if you believe that a firearm was used or attempted to be used and that person had no license to carry the same that *shall* be evidence of his intention to commit said crime of violence.

*See* Trial Trans. at 432 (emphasis added). Based on this language, a reasonable juror might well conclude that mere proof of appellees' possession of unlicensed firearms, and nothing more, automatically entailed conclusive proof that appellees had the requisite intent to commit a crime of violence, in this case, murder.[4]

Notwithstanding this language, the Commonwealth submits that instructing a jury that a fact "shall be evidence" merely suggests to them that they may accept or reject this piece of evidence in the same way that they may accept or reject any

4. It is important at this juncture to take note of the one crucial difference between the instruction at issue and the language of 18 Pa.C.S. § 6104. The statute mandates the relevant inference based on the predicate fact that the accused was "armed with an [unlicensed] firearm, used or attempted to be used...." The actual instruction, on the other hand, mandated the inference based on the predicate fact that the accused was "armed with an [unlicensed] firearm *or* ... [such] a firearm was used or attempted to be used ...." (emphasis added). Thus, the plain meaning of the instruction at issue mandates the inference merely from the proven fact that the accused *possessed* an unlicensed firearm, regardless of whether the Commonwealth proved that such firearm was actually used in any way in the crime.

other piece of evidence. In other words, the claim is that although the instruction declared the unlicensed weapon to be evidence of intent, the jury still had the discretion to determine whether to credit the evidence and to determine what conclusions to draw from such evidence. The Commonwealth's argument overlooks the fact that the instruction specifically states that proof of the unlicensed weapon "shall be evidence **of his intention to commit said crime of violence.**" With this final phrase, the instruction is cured of the putative ambiguity upon which the Commonwealth bases its argument.

Moreover, any ambiguity that arguably inhered in the language of the instruction at issue was negated by the language that the trial court employed to convey other instructions to the jury. In delivering its instruction on the use of a deadly weapon on a vital part of the victim's body, the trial court stated:

> When deciding whether the defendant had a specific intent to kill you should consider all of the evidence regarding his words and conduct and the attending circumstances that may show his state of mind. If you believe that the defendant or an accomplice intentionally used a deadly weapon on a vital part of the victim's body you *may* regard that as an item of circumstantial evidence from which you may *if you choose* infer that the defendant or an accomplice had the specific intent to kill.

Trial Trans. at 427 (emphasis added). In contrast with this permissive language, the language of the instruction at issue informs a reasonable juror that the relevant inference *shall* be drawn if the predicate facts are proved.[5] Therefore, we find

---

**5.** The dissent seizes on the above-excerpted portion of the trial court's charge as evidence that the charge in its totality did not create a mandatory presumption. However, this portion of the charge was concerned only with the inferences to be drawn from use of *any* deadly weapon on a vital part of the victim's body. In contrast, the portion of the charge at issue in this matter is concerned with the inferences to be drawn from use of or possession of an *unlicensed firearm*. The portion of the charge relating to use of a deadly weapon merely suggests a permissive inference, whereas the subsequent portion relating to use of an unlicensed firearm prescribes a mandatory presumption. Thus,

that the presumption contained in the relevant instruction is mandatory in character. Since the instruction at issue contained a "mandatory presumption with respect to a material element of the crime, we must next examine this presumption on its face to determine the extent to which the basic facts and the elemental facts truly coincide." *Ulster County Court v. Allen*, 442 U.S. at 157, 99 S.Ct. 2213. The evidentiary value of the presumption, and hence its validity under the Due Process Clause of the Fourteenth Amendment, will depend upon the strength of the connection between the basic facts and the elemental facts. *Id.* In other words, since the jury could reasonably have inferred that proof of the predicate fact necessarily entailed proof of the material element, the predicate fact must therefore be so linked to the material element in actual experience or logic so as to necessarily establish the material element beyond a reasonable doubt. Here, the "basic" or predicate fact that appellee was carrying an unlicensed firearm was inferentially linked to the "elemental" or ultimate fact that appellee intended to commit murder. Because the connection between these two sets of facts is tenuous at best, the instruction violated due process.

Simply put, the issue of whether one happened to be carrying an unlicensed firearm has little probative value with respect to the ultimate issue of whether one possessed the requisite intent to be convicted of a crime stemming from an act of violence that the person committed. If the fact of carrying an unlicensed firearm is probative at all, it certainly does not rise to the level of sustaining the Commonwealth's burden of proving beyond a reasonable doubt that the accused acted deliberately. We need not decide today just how lacking in probative value we believe the fact of carrying an unlicensed firearm is with regard to proving intent; it is enough to say that it is sufficiently lacking as to have resulted in a due process violation when it formed, *by itself,* the basis of

contrary to the dissent's assertion, the totality of the charge exacerbated the flawed jury instruction at issue here by informing jurors that while use of one type of weapon could give rise to permissive inferences, use of another type mandated a presumption of guilt on the issue of intent.

a mandatory presumption of intent, as it did with respect to the instruction at issue.

■ Finally, the parties have expended a great deal of energy briefing the issue of "harmless error" and debating whether the other evidence in the record, besides the instruction at issue, warranted a finding of homicidal intent. However, given the nature of the mandatory presumption in this case, "harmless error" analysis is not warranted. In *Connecticut v. Johnson*, 460 U.S. 73, 103 S.Ct. 969, 74 L.Ed.2d 823 (1983)[6], the United States Supreme Court decided whether "harmless error" review was appropriate in determining whether a burden-shifting jury instruction deprived the accused of due process.[7] The Court noted that a conclusive instruction on the issue of intent was the functional equivalent of a directed verdict on that issue. *Id.* at 84, 103 S.Ct. 969 (citing *Sandstrom v. Montana*, 442 U.S. 510, 512, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979)). The Court further stated that because a conclusive presumption improperly eases the jury's task, there is no reason to conclude that the jury would have

**6.** The dissent refers to *Johnson* as a non-precedential decision in which the Court was equally divided on the issue of whether the sort of error at issue here is subject to harmless error analysis. We disagree with this characterization of *Johnson*. It is true that only four Justices signed on to the lead opinion in *Johnson*. However, Justice Stevens' concurrence suggested his agreement with the lead opinion insofar as it addressed the merits of the case. Indeed, Justice Stevens thought that the State of Connecticut's position that harmless error analysis was mandated by the federal constitution was "so clearly erroneous that it does not merit the Court's review by writ of certiorari." *Id.* at 88, 103 S.Ct. 969. Justice Stevens simply opined that "no federal question arises when a state court has decided for itself that it will decline to apply the Chapman harmless-error test at all once it has found Sandstrom error." *Id.* at 90 n. 4, 103 S.Ct. 969. On the merits, however, Justice Stevens joined the disposition as set forth in the lead opinion "because a fifth vote [was] necessary to authorize the entry of a Court judgment." *Id.* at 90, 103 S.Ct. 969. Thus, by casting his "fifth vote" with the lead opinion, Justice Stevens furnished a majority on the merits of the issue presented to the Court, contrary to the conclusion of the dissent in this matter.

**7.** The instruction at issue stated:

... A person's intention may be inferred from his conduct and every person is conclusively presumed to intend the natural and necessary consequences of his act.

*Id.* at 78, 103 S.Ct. 969.

undertaken the more difficult task of evaluating the evidence of intent. *Id.* at 85, 103 S.Ct. 969 (quoting *Sandstrom,* 442 U.S. at 526 n. 13, 99 S.Ct. 2450). Thus, the Supreme Court of the United States concluded that "the pivotal concept of *Sandstrom* is that the possibility that the jury reached its decision in an impermissible manner requires reversal even though the jury may also have reached the same result in a constitutionally acceptable fashion." *Id.* at 85 n. 13, 103 S.Ct. 969.

Applying the lessons of *Sandstrom* to the concept of "harmless error," the *Johnson* Court concluded that judicial assessment of the independent evidence of intent is irrelevant and unwarranted. *See id.* at 86, 103 S.Ct. 969. "To allow a reviewing court to perform the jury's function of evaluating the evidence of intent, when the jury may never have performed that function, would give too much weight to society's interest in punishing the guilty and too little weight to the method by which decisions of guilt are made." *Id.* Thus, the Court determined that "harmless error" analysis was inappropriate in reviewing a jury instruction that had mandatorily shifted the burden to the accused to disprove a material element of the crime. *See id.*

In *Rose v. Clark,* 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986), the Supreme Court *sub silentio* limited its holding in *Johnson* and determined that "harmless error" analysis was appropriate in some cases where a jury instruction contained a mandatory presumption on a material element.[8] However, unlike the instructions at issue in *Johnson* and in the case *sub judice,* the instruction at issue in *Rose* expressly provided that the presumption could be rebutted by other evidence. Furthermore, essential to the Court's holding in *Rose* was the fact that the mandatory presumption at issue was one that the

8. The trial court's instruction in *Rose* stated:
    All homicides are presumed to be malicious in the absence of evidence which would rebut the implied presumption. Thus, if the state has proven beyond a reasonable doubt that a killing has occurred, then it is presumed that the killing was done maliciously. But this presumption may be rebutted by either direct or circumstantial evidence. . . .

Court considered "overpowering" in the run of cases. *See id.* at 581 n. 9, 106 S.Ct. 3101. In this regard, the Court stated, "No one doubts that the trial court properly could have instructed the jury that it could infer malice from respondent's conduct." *Id.* at 581, 106 S.Ct. 3101. Thus, the Court determined that justice would not be furthered in such a case by reversing a conviction without "harmless error" review, and remanded for further consideration. *Id.*

We find that like the instruction at issue in *Connecticut v. Johnson,* and unlike the instruction at issue in *Rose v. Clark,* the instruction in the matter *sub judice* contains a constitutional infirmity that is not receptive to "harmless error" analysis. The inference mandated by the instruction at issue lacks the inherent reliability of the inference at issue in *Rose.* Furthermore, the instruction at issue here did not inform jurors that they could consider other evidence. If this Court were to undertake "harmless error" analysis and consider whether the evidence apart from the mandatory inference supports a verdict of guilty, this Court would be usurping the function of the jury. This would be true no matter how overwhelming we believed the independent evidence to be. In our system of law, the accused has the categorical right to have *all* of the state's evidence examined and weighed by a jury, regardless of what "natural" inferences a judge or the legislature believes should be drawn from that evidence in its totality. Thus, we affirm the order of the Superior Court reversing the convictions and remanding for a new trial.[9]

Justice NIGRO files a dissenting opinion.

**9.** The dissent believes that our holding herein is at odds with this Court's holding in *Commonwealth v. Buehl,* 540 Pa. 493, 658 A.2d 771 (1995), where we rejected the defendant's claim that a charge similar to the one at issue here improperly relieved the prosecution of its burden. However, in *Buehl,* this Court did not rule on the merits of the issue presented herein, but simply noted that the issue arose within the confines of an ineffective assistance claim under the Post Conviction Relief Act, and that the "claim fails the prejudice prong of the [ineffectiveness] test." *Id.* at 510, 658 A.2d at 780. The issue before the Court here does not relate to counsel's stewardship, but rather to trial court error. Thus, the ineffective assistance test, upon which this Court relied in disposing of the claim in *Buehl,* is inapposite here.

394

NIGRO, Justice, dissenting.

Since I disagree with the Majority that the challenged jury instruction amounted to reversible error, I respectfully dissent.

In the first instance, when evaluating jury instructions for error, the reviewing court must consider the entire charge and not merely isolated fragments. *Commonwealth v. Karenbauer*, 552 Pa. 420, 715 A.2d 1086, 1098 (Pa.1998). Here, as noted by the Majority, the trial court, during its charge on accomplice liability, instructed the jury that Appellees' possession or use of an unlicensed firearm "shall be evidence of his intention to commit said crime of violence." N.T. at 432. The Majority concludes that this statement to the jury effectively relieved the Commonwealth of its burden of proving that Appellees had the requisite intent to commit murder. However, as part of the same jury charge, the court instructed the jury that "it is not the defendant's burden to prove each defendant is not guilty. Instead, it is the Commonwealth that always has the burden of proving each and every element of the crimes charged beyond a reasonable doubt." *Id.* at 416–17. Regarding intent, the court then stated:

> when deciding whether the defendant had a specific intent to kill you should consider all of the evidence regarding his words and conduct and the attending circumstances that may show his state of mind. If you believe that the defendant or an accomplice intentionally used a deadly weapon on a vital part of the victim's body you may regard that as an item of circumstantial evidence from which *you may if you choose* infer that the defendant or an accomplice had the specific intent to kill.

*Id.* at 427 (emphasis added). Viewed in its entirety, then, I do not believe that the trial court's charge to the jury had the categorical effect of relieving the Commonwealth of its burden of proving that Appellees' possessed the intent required for a conviction of first-degree murder.

Even if the court's instruction to the jury constituted error, however, I disagree with the Majority that such error is not

subject to a harmless error analysis. The Majority relies on a non-precedential opinion handed down in *Connecticut v. Johnson*, 460 U.S. 73, 103 S.Ct. 969, 74 L.Ed.2d 823 (1983), where the Supreme Court was equally divided on whether an erroneous jury instruction, which allowed the jury to presume intent in violation of the due process clause, could be harmless error. However, after *Johnson*, in *Rose v. Clark*, 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986), the Supreme Court decided that a harmless error analysis applied to an erroneous instruction shifting the burden of proof as to malice, a material element of the crime charged. In so holding, the Court stated that an otherwise valid conviction generally should not be set aside if the reviewing court finds, on the whole record, that a constitutional error was harmless beyond a reasonable doubt. *Id.* at 576, 106 S.Ct. at 3105. It emphasized that where a defendant had counsel and was tried by an impartial adjudicator, a strong presumption arises that any errors are subject to a harmless error analysis. *Id.* at 579, 106 S.Ct. at 3106. The Court further stated:

> When a jury is instructed to presume malice from predicate facts, it still must find the existence of those facts beyond a reasonable doubt. . . . In many cases, the predicate facts conclusively establish intent, so that no rational jury could find that the defendant committed the relevant criminal act but did not intend to cause injury. . . . In that event the erroneous instruction is simply superfluous: the jury has found . . . 'every fact necessary' to establish every element of the offense beyond a reasonable doubt. . . .

*Id.* at 580–81, 106 S.Ct. at 3107 (citations omitted). In light of the Supreme Court's decision in *Rose*, a harmless error standard applies here.[1]

The circumstances of this case clearly indicate that the jury properly relied on the evidence produced at trial in finding

---

1. Even Appellee Domes, citing *Rose*, concedes in his brief that in the context of a burden-shifting presumption, "courts must engage in and inquire into the effect of the error on the verdict." Appellee's Brief at 14. Likewise, Appellee Kelly states in his brief that "assuming arguendo that there has been a due process violation, this court must now determine whether the error is harmless." Appellee's Brief at 13.

that Appellees possessed the requisite intent to commit first-degree murder. The evidence presented at trial essentially pitted two conflicting versions of the events surrounding Carl Bracey's murder. Testifying on his own behalf, Appellee Domes claimed that while he was present at the scene of the shooting, neither he nor Appellee Kelly possessed a gun during his fight with Mr. Bracey. Rather, Domes testified that he heard shots fired during the fight from an unknown source and immediately fled the scene along with Appellee Kelly. The Commonwealth, meanwhile, presented the testimony of eyewitnesses to the shooting who claimed that both Appellees not only had guns during Domes' fight with Mr. Bracey but that both Appellees fired those guns at Mr. Bracey as he attempted to flee the scene of the fight. *See* N.T. at 79–81, 248.

The verdict returned by the jury, finding each Appellee guilty of first-degree murder, plainly establishes that they credited the Commonwealth's version of the events over that espoused by the defense. Once it is recognized that the jury accepted the Commonwealth's version of the events and determined that Appellees were in fact the triggermen, as their verdict clearly reflects, it becomes evident that the jury's finding of specific intent was driven by the evidence presented at trial and by what version of events they believed, and not by the challenged jury instruction. As in *Rose*, the circumstances in the instant case clearly establish, in my view, that "no rational jury could find that the defendant committed the relevant criminal act but did not intend to cause [it]." *Rose* at 580–81, 106 S.Ct. at 3107.[2]

**2.** Likewise, in *Commonwealth v. Buehl*, 540 Pa. 493, 658 A.2d 771 (1995), this Court found that the defendant's trial counsel was not ineffective for failing to object to a charge similar to the one challenged in the instant case. Like Appellees here, the defendant in *Buehl* claimed that the "shall" command of the charge improperly relieved the prosecution of its burden of proving intent beyond a reasonable doubt. In rejecting the defendant's claim, the Court stated:

Appellant raised the defense of mistaken identity. Never did the defense assert lack of intent as a defense. Indeed, to have done so would have been futile because the evidence from which intent could be inferred was overwhelming. We find it unlikely that changing a

Unlike the Majority, then, I believe that the challenged instruction, if erroneous at all, is subject to a harmless error analysis under *Rose.* Since I find that any error committed by the trial court in its jury instructions was harmless in light of the circumstances of this case, which compel the conclusion that the challenged instruction did not contribute to the jury's verdict, I would affirm the judgments of sentence. *See Rose,* 478 U.S. at 579, 106 S.Ct. at 3106 ("where a reviewing court can find that the record developed at trial establishes guilt beyond a reasonable doubt, the interest in fairness has been satisfied and the judgment should be affirmed").

single "shall" to a "may" in the context of a seventy-two page charge would have affected the jury's finding that the three murders in question had been intentionally committed in any way. *Id.* at 509, 658 A.2d at 779. Here, similar to the defense of mistaken identity raised by the defendant in *Buehl,* Appellees asserted that, although present at the scene of the shooting, they were not the ones who shot Mr. Bracey. Appellees' case, therefore, clearly hinged on the identity of the shooter and not whether there was intent to kill. Since the jury's verdict demonstrates that they accepted the Commonwealth's version of events and found that Appellees were the ones who shot Mr. Bracey, it is clear that the jury's finding of intent was driven by the evidence produced at trial and not by the jury charge at issue here.