J-A17026-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
RODNEY EVANS :
:
Appellant : No. 1936 EDA 2021

Appeal from the PCRA Order Entered August 23, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0012651-2009

BEFORE: PANELLA, P.J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY NICHOLS, J.: **FILED NOVEMBER 21, 2022**

Appellant Rodney Evans appeals *pro se* from the order dismissing his

timely first Post Conviction Relief Act[1] (PCRA) petition. Appellant contends

that his trial counsel and direct appeal counsel were ineffective. We affirm.

The underlying facts and procedural history of this case are well known

to the parties. Briefly, Appellant was charged with third-degree murder and

related offenses after a shooting outside of a bar in 2009. PCRA Ct. Op.,

11/18/19, at 2. At trial, the Commonwealth presented evidence establishing

that Appellant had an argument with another man at the bar, and this man

was identified only as a man wearing a red shirt. *Id.* While the two men were

still inside the bar, Appellant pulled out a gun, pointed it at the man in the red

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

shirt, and "walked him outside." Trial Ct. Op., 8/1/11, at 4. This confrontation escalated into a gunfight, and during the gunfight between Appellant and the man in the red shirt, Mr. Peter Lyde, Jr., who was working security for the bar that night, was struck and killed by one of the bullets. *Id.*

Appellant was convicted of third-degree murder, possessing an instrument of crime (PIC), persons not to possess firearms, and firearms not to be carried without a license.[2] The jury convicted Appellant on a theory of transferred intent. *See id.* at 6-7 (citing *Commonwealth v. Gaynor*, 648 A.2d 295 (Pa. 1994)).

On September 13, 2010, the trial court sentenced Appellant to a term of twenty to forty years of incarceration on the murder conviction, one to two years of incarceration for PIC, a sentence of guilt without further penalty for persons not to possess firearms, and two-and-one-half to five years of incarceration for firearms not to be carried without a license. Sentencing Order, 9/13/10, at 1. The trial court ordered Appellant to serve all sentences concurrently. *See id.* On direct appeal, this Court affirmed Appellant's judgment of sentence. *See Commonwealth v. Evans*, 55 A.3d 131, 354 EDA 2011 (Pa. Super. filed July 11, 2012) (*Evans I*) (unpublished mem.).

Appellant filed a PCRA petition on March 18, 2013, which the PCRA court ultimately denied as untimely. *See* Order, 5/24/19. On appeal, a prior panel of this Court explained that Appellant's March 18, 2013 PCRA petition was filed

---

[2] 18 Pa.C.S. §§ 2502(c), 907(a), 6105(a), and 6106(a)(1) respectively.

within one year from the date Appellant's judgment of sentence became final. Therefore, the Court concluded that the PCRA court erred in dismissing Appellant's petition as untimely.[3] *Commonwealth v. Evans*, 1743 EDA 2019, 2021 WL 2394589, at *1-2 (Pa. Super. filed June 9, 2021) (*Evans II*) (unpublished mem.). The Court also found that remand was necessary for the PCRA court to address the status of Appellant's representation and his request to proceed *pro se*. *Id.* at *4. Therefore, we vacated the PCRA court's order and remanded the matter to the PCRA court for further proceedings. *Id.* at *5.

Following this Court's remand, the PCRA court conducted a *Grazier*[4] hearing on July 23, 2021. On July 27, 2021, the PCRA court granted Appellant's request to proceed *pro se* and PCRA counsel's motion to withdraw.

Appellant did not file nor seek to file an amended PCRA petition, and on August 2, 2021, the PCRA court issued a notice of intent to dismiss Appellant's

---

[3] This Court affirmed Appellant's judgment of sentence on July 11, 2012. *See Evans I*. Accordingly, Appellant had one year from August 10, 2012, the date on which the time for seeking an appeal in the Supreme Court of Pennsylvania expired, to file a timely PCRA petition. *See* 42 Pa.C.S. § 9545(b)(3) (explaining that for purposes of the PCRA, a petitioner's judgment of sentence becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of Pennsylvania and the Supreme Court of United States, or at the expiration of time for seeking review); *see also* Pa.R.A.P. 1113 (stating that "a petition for allowance of appeal shall be filed with the Prothonotary of the Supreme Court within 30 days after the entry of the order of the Superior Court or the Commonwealth Court sought to be reviewed."). Accordingly, Appellant had until August 10, 2013, to file a PCRA petition, and his March 18, 2013 PCRA petition was timely filed.

[4] *Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998).

PCRA petition without a hearing pursuant to Pa.R.Crim.P. 907. On August 19, 2021, Appellant filed a response to the PCRA court's Rule 907 notice, and on August 23, 2021, the PCRA court dismissed Appellant's PCRA petition.

Appellant filed a timely notice of appeal on September 14, 2021. The PCRA court did not order Appellant to file a Rule 1925(b) statement. The PCRA court subsequently issued an order incorporating prior opinions denying PCRA relief and concluding that Appellant's PCRA petition was properly dismissed as meritless. PCRA Ct. Order, 9/14/21, at 1.

On appeal, Appellant raises the following issues for review:

1. Did the PCRA court err in denying Appellant's claim that trial counsel was ineffective for failing to adequately investigate Appellant's point of law and understand a ballistics expert with an accurate measurement was needed to expose a forensic contradiction between the evidence and the Commonwealth's expert witness's testimony?

2. Did the PCRA court err in denying Appellant's claim that trial counsel was ineffective for failing to object and request a mistrial to the court's unrecorded *ex parte* instruction, and that direct review counsel was ineffective for failing to raise the claim?

3. Did the PCRA court err in denying Appellant's claim that trial counsel was ineffective for failing to object, and that direct review counsel was ineffective for failing to raise the trial court's improper mandatory presumption instruction which removed the choice from the jury to choose an independent intervening cause?

Appellant's Brief at 3-4.

**Failure To Call Ballistics Expert**

In his first claim, Appellant argues that trial counsel was ineffective for failing to call a ballistics expert at trial. Appellant's Brief at 14-29. Appellant claims that testimony from ballistics expert Carl Leisinger would have shown to the jury that it was impossible for discharged shell casings to eject over fifty feet from where Appellant was allegedly standing. *Id.* at 23. Appellant contends that Mr. Leisinger's expert testimony would have bolstered the defense, and trial counsel had no reasonable basis for not calling him as a witness at trial. *Id.* at 23-25.

> [O]ur standard of review from the denial of a PCRA petition is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error. The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions.

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1043 (Pa. Super. 2019) (citations omitted and formatting altered).

It is well settled that counsel is presumed to be effective, and Appellant bears the burden of proving otherwise. *Commonwealth v. Thomas*, 270 A.3d 1221, 1226 (Pa. Super. 2022). This Court has explained:

> [T]o establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her

- 5 -

action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

\* \* \*

Boilerplate allegations and bald assertions of no reasonable basis and/or ensuing prejudice cannot satisfy a petitioner's burden to prove that counsel was ineffective. Moreover, a failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness.

*Sandusky*, 203 A.3d at 1043-44 (citations omitted and formatting altered).

To satisfy the arguable merit prong for a claim of ineffectiveness based upon trial counsel's failure to call an expert witness, the petitioner must prove that an expert witness was willing and available to testify on the subject of the testimony at trial, counsel knew or should have known about the witness and the defendant was prejudiced by the absence of the testimony. Prejudice in this respect requires the petitioner to show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case. Therefore, the petitioner's burden is to show that testimony provided by the uncalled witnesses would have been helpful to the defense.

*Commonwealth v. Williams*, 141 A.3d 440, 460 (Pa. 2016) (citations and footnote omitted and formatting altered).

Trial counsel need not introduce expert testimony on his client's behalf if he is able effectively to cross-examine prosecution witnesses and elicit helpful testimony. Additionally, trial counsel will not be deemed ineffective for failing to call a medical, forensic, or scientific expert merely to critically evaluate expert testimony [that] was presented by the prosecution. Thus, the question becomes whether or not [defense counsel] effectively cross-examined [the Commonwealth's expert witness].

*Commonwealth v. Marinelli*, 810 A.2d 1257, 1269 (Pa. 2002) (citations omitted and formatting altered).

- 6 -

Here, the PCRA court addressed this issue as follows:

> In support of this claim, Appellant presented a report of a newly hired expert, Carl Leisinger. Specifically, Appellant alleged that Mr. Leisinger's opinion was that location of the 9mm discharged shells demonstrated that the shooter of the fatal bullet could not have been where Appellant was alleged to have been since it was about 50 feet from where those shells were recovered. This claim, too is meritless, as the proposed testimony was consistent, not inconsistent with the testimony of the Commonwealth's testifying expert, Officer Walsh, who also testified that the casings could not have traveled such a distance on their own. N.T., 6/18/10, 50-51. In fact, this issue was not in dispute. The evidence was not that Appellant's gun killed the victim. Instead, it was alleged that Appellant's conduct, which began inside the bar, escalated into the gunfight in which the man in the red shirt fired the fatal bullet. Accordingly, this new witness, even if called would not have changed the verdict and, accordingly, counsel could not have been ineffective.

PCRA Ct. Op., 11/18/19, at 7-8.

After review, we conclude that although Appellant attached a copy of Mr. Leisinger's report to his amended PCRA petition,[5] Appellant failed to establish that Mr. Leisinger was willing and available to testify at Appellant's trial. Accordingly, Appellant's claim fails. **See Williams**, 141 A.3d at 460; **see also Commonwealth v. Williamson**, 2022 WL 2127289, at *3 (Pa. Super. filed June 14, 2022) (unpublished mem.) (explaining that a claim that counsel was ineffective for failing to call an expert witness is facially defective when the petitioner fails to show that the expert was available and willing to

_____

[5] **See** Am. PCRA Pet., 10/6/14, at Ex. B.

testify for the defense (citing *Commonwealth v. Selenski*, 228 A.3d 8, 17 (Pa. Super. 2020)).[6,7]

In any event, were we to reach the merits of this issue, we would affirm on the basis of the PCRA court's opinion. *See* PCRA Ct. Op., 11/18/19, at 7-8. Had this issue been properly presented, we would find no error in the PCRA court's conclusions. *See Sandusky*, 203 A.3d at 1043. As noted by the PCRA court, the evidence at trial established that Appellant engaged in a gunfight, and this gunfight resulted in the death of Mr. Lyde. Appellant was convicted of murder on a theory of transferred intent. *See* PCRA Ct. Op., 11/18/19, at 8; Trial Ct. Op., 8/1/11, at 6-7. The Commonwealth's evidence also established that the 9mm shell casings at issue could not have travelled more than fifty feet from where one witness placed Appellant. *See* PCRA Ct. Op., 11/18/19, at 8 (citing N.T. 6/18/10, at 50-51). Appellant's argument that Mr.

---

[6] We may cite to unpublished memorandum decisions of this Court filed after May 1, 2019, for their persuasive value. *See* Pa.R.A.P. 126(b).

[7] Additionally, much of Appellant's argument on this first issue directly challenges the weight of the evidence rather than counsel's stewardship. *See* Appellant's Brief at 17-29. We note that Appellant thoroughly, but unsuccessfully, litigated a challenge to the weight of the evidence on direct appeal. *See Evans I*, 354 EDA 2011 at 6-10. We are cognizant that an issue presented as a claim of ineffective assistance of counsel is distinct from a weight claim raised on direct appeal. *See, e.g., Commonwealth v. Hanible*, 30 A.3d 426, 442 (Pa. 2011). Here, however, Appellant directly challenges the weight of the evidence throughout his argument, and because this issue was raised and addressed on direct appeal, we conclude that it was previously litigated, relief was denied, and further review of this issue is precluded. *See* 42 Pa.C.S. § 9544(a)(2) (providing that an issue is previously litigated where "the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue[.]").

Leisinger would have testified to this same conclusion would not benefit Appellant's defense. In other words, Appellant cannot establish prejudice because the proposed testimony was cumulative, and it concerned facts that were not in dispute and would not have changed the outcome of the trial. *See Williams*, 141 A.3d at 460. Therefore, were we to reach this issue, we would agree with the PCRA court that the claim fails. *See* PCRA Ct. Op., 11/18/19, at 7-8.

### *Ex Parte* Jury Instruction

In his next issue, Appellant argues that both trial counsel and direct appeal counsel were ineffective for failing to challenge the trial court's alleged *ex parte* jury instruction. Appellant's Brief at 29-38. Appellant contends that the trial court answered two questions from the jury outside the presence of Appellant and trial counsel, and that trial counsel and direct appeal counsel were ineffective for failing to raise the issue. *See id.*

The Commonwealth responds that Appellant's entire claim is based on the fact that the challenged jury questions and the trial court's answers were not included in the notes of testimony, and further that Appellant has not established that any *ex parte* communication occurred. Commonwealth's Brief at 9. Therefore, the Commonwealth contends that Appellant's claim is meritless. *Id.* at 10.

When a defendant claims that current counsel was ineffective for failing to challenge prior counsel's effectiveness, the defendant must present a

layered claim of ineffectiveness. *See Commonwealth v. McGill*, 832 A.2d 1014, 1022-23 (Pa. 2003).

This Court has explained:

Where the defendant asserts a layered ineffectiveness claim he must properly argue each prong of the three-prong ineffectiveness test for each separate attorney.

Layered claims of ineffectiveness are not wholly distinct from the underlying claims, because proof of the underlying claim is an essential element of the derivative ineffectiveness claim. In determining a layered claim of ineffectiveness, the critical inquiry is whether the first attorney that the defendant asserts was ineffective did, in fact, render ineffective assistance of counsel. If that attorney was effective, then subsequent counsel cannot be deemed ineffective for failing to raise the underlying issue.

*Commonwealth v. Rykard*, 55 A.3d 1177, 1190 (Pa. Super. 2012) (citations omitted and formatting altered), *abrogated in part by Commonwealth v. Bradley*, 261 A.3d 381 (Pa. 2021). However, it is well settled that "counsel cannot be deemed ineffective for failing to raise a meritless claim." *Commonwealth v. Treiber*, 121 A.3d 435, 445 (Pa. 2015) (citation omitted).

Here, the PCRA court concluded that Appellant's claim lacked arguable merit because Appellant did not establish that the alleged unrecorded *ex parte* jury instruction actually occurred. PCRA Ct. Op., 9/28/20, at 8. Based on our review of the record, we agree with the PCRA court's conclusion.

The notes of testimony reflect that the trial court received and answered the jury's "third" question on July 1, 2020. *See* N.T., 7/1/10, at 2. The notes of testimony clearly reflect that trial counsel was present at that time. *See*

*id.* at 2. However, there is no indication in the record that an *ex parte* communication by the trial court to the jury occurred or that trial counsel believed that an *ex parte* communication took place.

Further, as noted by the PCRA court, Appellant failed to present any evidence, establishing that the trial court gave an *ex parte* instruction to the jury. Instead of providing an affidavit from trial counsel that would support his claim, Appellant presents a letter from court reporter Kim Kendall which states that there are no notes of testimony from June 30, 2010, which was the date that the trial court allegedly answered the jury's first two questions, but the letter does not indicate that the trial court conducted *ex parte* communications with the jury. Second Am. PCRA Pet., 8/5/15, at Ex. B. Accordingly, even if there were no notes of testimony from that date, there is no support for Appellant's accusation that trial court conducted the proceedings while Appellant and trial counsel were absent from the courtroom.

For these reasons, we find no error in the PCRA court's conclusion that Appellant's claim is meritless. *See Sandusky*, 203 A.3d at 1043. Therefore, because there is no arguable merit to Appellant's contention, his ineffectiveness claims fail. *See Treiber*, 121 A.3d at 445; *Rykard*, 55 A.3d at 1190. Accordingly, Appellant is not entitled to relief.

**Causation Instruction**

In his final issue, Appellant argues that trial counsel was ineffective for failing to challenge the trial court's jury instruction regarding the causation element for third-degree murder. Appellant's Brief at 38-39. Appellant claims

that the jury instruction prevented the jury from finding that there was an independent intervening cause and created a mandatory presumption. *Id.* at 39-42. Appellant asserts that trial counsel had no reasonable basis for failing to raise the claim, and direct appeal counsel had no reasonable basis for failing to present the claim on direct appeal. *Id.* at 42-43.

As stated previously, "counsel cannot be deemed ineffective for failing to raise a meritless claim." *Treiber*, 121 A.3d at 445. Therefore, Appellant must show a reasonable probability that counsel's objection to the challenged instruction would have led to a more favorable outcome. *See generally Commonwealth v. Turetsky*, 925 A.2d 876, 880 (Pa. Super. 2007).

With regard to jury instructions, our Supreme Court has explained:

The trial court possesse[s] broad discretion in phrasing its instructions to the jury and [is] permitted to choose its own wording so long as the law was clearly, adequately and accurately presented to the jury for consideration. Furthermore, a trial court need not accept counsel's wording for an instruction, as long as the instruction given correctly reflects the law. It is axiomatic that, in reviewing a challenged jury instruction, an appellate court must consider the charge in its entirety, not merely isolated fragments, to ascertain whether the instruction fairly conveys the legal principles at issue. Instructions will be upheld if they adequately and accurately reflect the law and are sufficient to guide the jury properly in its deliberations.

*Commonwealth v. Fletcher*, 986 A.2d 759, 802 (Pa. 2009) (citation omitted). Further, this Court has stated:

A jury charge will be deemed erroneous only if the charge as a whole is inadequate, not clear or has a tendency to mislead or confuse, rather than clarify, a material issue. A charge is considered adequate unless the jury was palpably misled by what the trial judge said or there is an omission which is tantamount to

- 12 -

fundamental error. Consequently, the trial court has wide discretion in fashioning jury instructions.

*Commonwealth v. Thomas*, 904 A.2d 964, 970 (Pa. Super. 2006) (citations omitted). "In examining the propriety of the instructions a trial court presents to a jury, our scope of review is to determine whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case." *See id.* (citation omitted).

A mandatory presumption "tells the trier of fact that he must find the elemental fact upon proof of the basic fact." *Commonwealth v. Hall*, 830 A.2d 537, 544 (Pa. 2003). When determining whether a charge created a mandatory presumption, the analysis is as follows:

> The threshold inquiry in ascertaining the constitutional analysis applicable to this kind of jury instruction is to determine the nature of the presumption it describes. *Francis v. Franklin*, [471 U.S. 307, 314 (1985)] (quoting *Speiser v. Randall*, 357 U.S. 513, 514 (1958)). This Court must determine whether the challenged portion of the instruction creates a mandatory presumption, or merely a permissive inference. A mandatory presumption instructs the jury that it must infer the presumed fact if the state proves certain predicate facts. On the other hand, a permissive inference suggests to the jury a possible conclusion to be drawn if the state proves predicate facts, but [it] does not require the jury to draw that conclusion. In determining whether a mandatory presumption or a permissive inference has been created, a reviewing court must assess the challenged instruction from the viewpoint of a reasonable juror and declare it to create a "mandatory presumption" if such a juror could reasonably believe that proof of the predicate facts automatically shifts the burden of persuasion on the relevant element to the defendant. *See id.*, 471 U.S. at 315.
>
> A mandatory presumption is the more troublesome of the two evidentiary devices, "for it may affect not only the strength of the 'no reasonable doubt' burden but also the placement of that

burden; it tells the trier that he or she must find the elemental fact upon proof of the basic fact, at least until the defendant has come forward with some evidence to rebut the presumed connection between the two facts." ***Ulster County Court v. Allen***, 442 U.S. 140, 157 (1979). If a jury instruction contains a mandatory presumption, a reviewing court must examine the presumption on its face to determine the extent to which the basic and elemental facts truly coincide. If these facts do not coincide, then the presumption will be deemed violative of due process, regardless of whether an independent evaluation of the facts presented by the state supports the mandatory inference. ***See id.*** If, on the other hand, a jury instruction contains a permissive inference, then the totality of evidence in the record other than the presumption will be germane in an analysis of the inference's constitutional validity. ***See id.***

Thus, the first step for this Court is to decide whether the instruction given by the trial court created either a mandatory presumption or a permissive inference.

***Commonwealth v. Kelly***, 724 A.2d 909, 911-12 (Pa. 1999) (formatting altered).

Here, as stated previously, Appellant was convicted of third-degree murder, and the standard jury instruction for causation provides, in relevant part, as follows:

1. The defendant has been charged with killing [or] causing the death of [name of victim]. To find the defendant guilty of this offense, you must find beyond a reasonable doubt that the defendant's conduct was a direct cause of his . . . death.

2. In order to be a direct cause of a death, a person's conduct must be a direct and substantial factor in bringing about the death. There can be more than one direct cause of a death. A defendant who is a direct cause of a death may be criminally liable even though there are other direct causes.

3. A defendant is not a direct cause of a death if . . . the actions of a third person [or] the occurrence of another event plays such an independent, important, and overriding role in bringing about the death, compared with the role of the defendant, that the

- 14 -

defendant's conduct does not amount to a direct and substantial factor in bringing about the death.

4. A defendant's conduct may be a direct cause of a death even though his or her conduct was not the last or immediate cause of the death. Thus, a defendant's conduct may be a direct cause of a death if it initiates an unbroken chain of events leading to the death of the victim.

Pa. SSJI (Crim), § 15.2501C(1)-(4) (some formatting altered). Moreover, the standard jury instruction for transferred intent states:

The Commonwealth has alleged that while the defendant intended to kill . . . [name of intended victim], he . . . actually caused the death of [name of deceased].

If you find beyond a reasonable doubt that the defendant intended to kill . . . [name of intended victim] and was . . . acting with that intent at the time he . . . in fact killed [name of deceased], you may find the defendant acted with the specific intent to kill under what the law calls the doctrine of transferred intent.

What this means is that if the actual result the defendant intended differs from what he . . . contemplated only because a different person than the one actually intended was killed, the element of causing the death with specific intent to kill is still established.

Pa. SSJI (Crim), § 15.2501C.1.

The record reflects that the trial court conducted a charging conference at which both trial counsel and the Commonwealth discussed the proposed jury instructions. *See* N.T., 6/28/10, at 5-38. At that time, trial counsel reiterated the defense theory that the actions of the man in the red shirt constituted an independent intervening cause of the victim's death and therefore an affirmative defense to the third-degree murder charge. ***See id.*** at 12. Specifically, trial counsel argued that if Appellant "did not shoot or demonstrate his intent to shoot," then the actions by the man in the red shirt

were not "self defensive" and "would be an independent intervening cause of death." *Id.* at 15. Therefore, trial counsel requested an instruction stating that the jury could only reject the independent intervening cause theory if it specifically found that Appellant not only chased the man in the red shirt while "brandishing" a gun, but also gave chase "while pointing a gun with the intent to shoot." *See id.* at 12-19.

Ultimately, the trial court instructed the jury that Appellant was charged with causing the death of Mr. Lyde. The court informed the jury that before it may find Appellant guilty of third-degree murder, it must find that Appellant's actions constituted a direct cause of Mr. Lyde's death, and that Appellant acted with malice. N.T. 6/29/10, at 132, 136-37. The trial court further stated:

> In order to be a direct cause of a death a person's conduct must be a direct and substantial factor in bringing about the death. There can be more than one direct cause of the death. A defendant who is a direct cause of the death may be criminally liable even though there are other direct causes.
>
> However, a defendant is not a direct cause of the death if the actions of the third person or the occurrence of another event played such an independent important and overriding role in bringing about the death compared with the role of the defendant that the defendant's conduct does not amount to a direct and substantial factor in bringing about the death.
>
> A defendant's conduct may be a direct cause of the death even though his conduct was not the last or immediate cause of the death. Thus, a defendant's conduct may be a direct cause of the death if it initiates an unbroken chain of events leading to the death of the victim.
>
> When the defendant with a conscious disregard of life intentionally commits an act that is likely to cause death and his intended victim

- 16 -

or someone else kills in reasonable response to such act the causation element has been satisfied[.]

*Id.* at 133 (formatting altered). The trial court included the following examples of where an independent intervening cause cannot be established:

[F]or example, by initiating a gunfight or participating in mutual gunfights or while chasing someone while brandishing a gun with the intent to shoot or by some other similar aggressive conduct which demonstrates to the jury that the defendant had a conscious disregard for life. Under those circumstances a self-defense killing by someone other than the defendant cannot be considered an independent intervening cause.

*Id.* at 133-134 (formatting altered).

Here, the PCRA court rejected Appellant's claim that trial counsel and direct appeal counsel were ineffective for failing to challenge the jury instruction for causation. *See* PCRA Ct. Op., 11/18/19, at 7. Based on our review of the record, we agree with the PCRA court's conclusion.

The record reflects that trial court provided the standard jury instruction for both causation and transferred intent. As part of the charge for third-degree murder, the jury was instructed to determine if Appellant's conduct was the cause of Mr. Lyde's death or if there was an independent intervening action of another person that was the direct cause of Mr. Lyde's death. N.T., 6/29/10, at 133. Because there was evidence that the man in the red shirt may have fired shots at Appellant in self-defense, the trial court instructed the jury to consider whether Appellant initiated the gunfight or if Appellant pursued the man in the red shirt with the intent to shoot him. *Id.* at 134. The trial court then stated that if the evidence showed that Appellant engaged

in either action, they could not find that the actions by the man in the red shirt were an independent intervening cause of the victim's death. *See id.*

Following our review of the record, we find no error in the PCRA court's conclusion on this issue. *See Sandusky*, 203 A.3d at 1043. On this record, there is no basis to conclude that the trial court's instruction created a mandatory presumption regarding the causation element for third-degree murder. As noted previously, the trial court gave the standard instruction for causation and accurately described the circumstances where an independent intervening cause may exist. Therefore, we conclude that the trial court's instructions, when read as a whole, did not relieve the Commonwealth of its burden of proving the elements of the crime beyond a reasonable doubt. *See Fletcher*, 986 A.2d at 803; *see also Sandusky*, 203 A.3d at 1099.

Further, trial counsel was not ineffective in failing to object to jury instructions that, when viewed as a whole, properly informed the jury on the law and which did not create a mandatory presumption. *See Fletcher*, 986 A.2d at 803; *Kelly*, 724 A.2d at 911-12. Similarly, because the underlying issue was meritless, direct appeal counsel was not ineffective for failing to raise the issue on appeal. *See Treiber*, 121 A.3d at 445. For these reasons, Appellant is not entitled to relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>11/21/2022</u>